MANCHESTER SAND AND GRAVEL COMPANY, INC.,
ET AL. *v.* TOWN OF SOUTH WINDSOR
(12811)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and F. FREEDMAN, Js.

Argued December 9, 1986—decision released April 21, 1987

*Richard M. Rittenband,* town attorney, with whom was *Barry Guliano,* for the appellant (defendant).

*James H. Throwe* and *Thomas W. Fahey, Jr.,* with whom was *Anita D. Cobb,* for the appellees (plaintiffs).

CALLAHAN, J. This action was commenced to enjoin the town of South Windsor from enforcing a town ordinance[1] passed on December 17, 1984, which pro-

---

[1] On December 17, 1984, the South Windsor town council adopted the following ordinance, effective December 31, 1984: "An Ordinance Prohibiting Truck Traffic on Rye Street and Troy, Graham, Nevers, Miller and Niederwerfer Roads in the Town of South Windsor.

"(a) Definition: Truck means every motor vehicle, other than emergency, public safety and education vehicles and vehicles owned or leased by or operating under contract with the Town of South Windsor, having a gross vehicle weight of fifteen (15) thousand pounds or over and designed, used and maintained primarily for the transportation of property and includes a motor vehicle designed and used for the purpose of drawing a semi-trailer, as well as the vehicle drawing the semi-trailer and the semi-trailer.

"(b) No person shall operate any truck on Rye Street within the Town of South Windsor except while on a trip with a point of origin from or destination on said Rye Street within the Town of South Windsor, no person shall operate any truck on Graham Road within the Town of South Windsor except while on a trip with a point of origin from or destination on said Graham Road within the Town of South Windsor; no person shall operate any truck on Troy Road within the Town of South Windsor except while on a trip with a point of origin from or destination on said Troy Road within the Town of South Windsor; no person shall operate any truck on Nevers Road within the Town of South Windsor except while on a trip with a point of origin from or destination on said Nevers Road within the Town of South Windsor; no person shall operate any truck on Miller Road within the Town of South Windsor except while on a trip with a point of origin from or destination on said Miller Road within the Town of South Windsor; and no person shall operate any truck on Niederwerfer Road within the Town of

hibits trucks with a gross vehicle weight (gvw) in excess of 15,000 pounds from traveling over Rye Street, Graham Road, Troy Road, Nevers Road, Miller Road and Niederwerfer Road in South Windsor except while on a trip with a point of origin from or a destination on those streets or certain neighboring streets within the town.[2] The action was commenced by the named plaintiff, Manchester Sand and Gravel Company, Inc., which obtained a temporary restraining order prohibiting the enforcement of the ordinance. Prior to a hearing on the named plaintiff's request for a permanent injunction, the town of East Windsor filed a substitute complaint and the city of New Britain, on motion, was allowed to intervene and file a substitute complaint. Both East Windsor and New Britain claimed an interest in the action and also requested injunctive relief.

South Windsor except while on a trip with a point of origin from or destination on said Niederwerfer Road within the Town of South Windsor; and except as follows:

"If the point of origin from or destination is on any of the following streets: Abar Lane, Abbe Road, Abbe Road Extension, Alexander Place, Alison Drive, Ann Road, Apple Orchard Lane, Ash Road, Ayers Road, Barber Hill Road, Benjamin Way, Berle Road, Bramblebrae, Brook Street, Brookfield Street, Cherry Blossom Lane, Christine Lane, Doria Lane, Dower Road, Farmstead Drive, Farnham Road, Fox Hill Road, Fox Meadow Lane, Garnet Lane, George Road, Gordon Drive, Grace Road, Graham Road, Greenfield Drive, Griffin Road, Harvest Lane, Hayes Road, Hazel Street, Henry Road, Herman Way, High Tower Road, Joseph Lane, June Drive, Lake Street, Lewis Drive, Locust Street, Mark Drive, Maskel Road, McGrath Road, Meadow Road, Meryl Road, Miller Road, Nevers Road, Niederwerfer Road, Norma Road, Old Farm Road, Overlook Road, Pear Tree Lane, Plum Lane, Poplar Drive, Riverside Drive, Robert Drive, Rockledge Drive, Rosemary Lane, Rustic Lane, Rye Street, Scantic Meadow Road, Thomas Street, Troy Road, Wendy Drive, Wentworth Drive, Windshire Drive, Windsorvill Road, Wood Pond Drive.

"(c) Penalty: Any person violating the terms of this Ordinance shall be fined $99.00 for each offense."

[2] The ordinance was passed in response to heavy truck traffic on Rye Street and Graham Road; the four other streets were added for fear a ban on truck traffic on Rye Street and Graham Road would shift the problem to those other streets.

The trial court, after hearing extensive testimony and viewing numerous exhibits, granted the plaintiffs' request for a permanent injunction. The trial court filed a memorandum which indicated that it rested its decision on three grounds: (1) the ordinance violates the equal protection clauses of both the federal and state constitutions; (2) the ordinance regulates through truck traffic and such regulation has been preempted by the state by virtue of General Statutes § 14-298; and (3) there are no reasonable alternative routes available for through truck traffic.[3]

We conclude that the South Windsor ordinance is invalid because it constitutes a regulation of through truck traffic,[4] a function reserved to the state traffic commission by General Statutes § 14-298. Since this issue is dispositive of the case, it is unnecessary to address the other two issues. "Constitutional issues are not considered unless absolutely necessary to the decision of a case . . . ." *State* v. *DellaCamera,* 166 Conn. 557, 560–61, 353 A.2d 750 (1974); *Alexander* v. *Robinson,* 185 Conn. 540, 548, 441 A.2d 166 (1981).

---

[3] The trial court judgment recites only the constitutional grounds. In its initial brief, the defendant town of South Windsor did not address the issue of the applicability of General Statutes § 14-298 and the plaintiffs did not file a Practice Book § 3012 (a) (now § 4013 [a]) statement. The plaintiffs did, however, raise § 14-298 in their brief and oral argument and the defendant addressed the issue in its reply brief and oral argument. Under the circumstances, we do not see how the defendant was prejudiced by the lack of a § 3012 (a) statement and, in view of the fact that § 14-298 is dispositive of this case, we will address this issue.

[4] There is no statutory definition of the term "through truck traffic." It should, therefore, be interpreted in accord with its usual meaning. *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 174, 479 A.2d 1191 (1984); *Brown* v. *New Haven Taxi Cab Co.,* 92 Conn. 252, 254, 102 A. 573 (1917). Patently, it refers to trucks which travel from a point outside the limits of a city, town or borough in this state, through such city, town or borough without any scheduled stop in the locality in question. *C. White & Son, Inc.* v. *Rocky Hill,* 181 Conn. 114, 121–22 n.5, 434 A.2d 949 (1980); see 30 Reports & Opinions of the Attorney General (1957) p. 68.

The facts necessary for our determination may be stated briefly. Manchester Sand and Gravel Company, Inc. (Manchester Sand & Gravel), operates a concrete manufacturing and sand and gravel processing plant in Manchester, just south of the boundary between Manchester and South Windsor. It also has a sand and gravel pit in East Windsor, north of the north-south boundary line between East Windsor and South Windsor from which it obtains raw material to operate the plant in Manchester. Prior to the enactment of the ordinance in question, Manchester Sand & Gravel utilized trucks with a gvw in excess of 15,000 pounds to haul material between its pit in East Windsor and its plant in Manchester. The route normally taken by its trucks in making the trip took them through South Windsor and over Graham Road in South Windsor, one of the streets specified in the ordinance as prohibited to trucks with a gvw in excess of 15,000 pounds.

In addition, trucks with a gvw well in excess of 15,000 pounds were used by the city of New Britain, which is located about twenty miles southwest of South Windsor, to haul refuse from New Britain to the North Capitol Region landfill (NORCAP), which is located in East Windsor, at a site a short distance north of the South Windsor-East Windsor boundary line.[5] The route normally traveled by these trucks also took them through South Windsor and over Rye Street in South Windsor, another of the streets specified in the ordinance as prohibited to trucks with a gvw in excess of 15,000 pounds. The trucks hauling for both Manchester Sand & Gravel and the city of New Britain made numerous daily trips.[6]

[5] New Britain's refuse is first taken to its transfer station in the town of Berlin, which is also southwesterly of South Windsor, and then transported by contract carrier to NORCAP. New Britain, by contract, also hauls refuse to NORCAP for the towns of Berlin and Southington.

[6] Trucks hauling refuse from West Hartford and private haulers also use South Windsor's streets to reach NORCAP.

The South Windsor ordinance, if valid, effectively closes, to trucks with a gvw in excess of 15,000 pounds, all roads that run directly between South Windsor and East Windsor on the north, except U.S. Route 5, which is located near the westerly boundary of both towns and Scantic Road, which is almost entirely in East Windsor, but intersects with Route 5 in South Windsor at its northerly boundary with East Windsor.[7] East Windsor complains that if South Windsor is allowed to accomplish that result by ordinance it will route all through trucks emanating from points south of East Windsor, with a gvw in excess of 15,000 pounds and with a destination in East Windsor, over roads and bridges in East Windsor, particularly those leading to the NORCAP landfill and the sand and gravel pit, that are unsuitable and unsafe for heavy truck traffic. Manchester Sand & Gravel and the carrier for New Britain complain that any alternate routes they are forced to travel, if their trucks are prohibited from using their normal routes through South Windsor, are circuitous and will cost them time and money.

South Windsor contends that its ordinance is not an attempt to regulate through trucks because it applies to all trucks in excess of 15,000 pounds, whether through or intratown, and that the ordinance is a reasonable regulation to promote safety and to prevent deterioration of town streets. A review of the transcript, however, makes it abundantly clear that the impetus leading to the passage of the ordinance, and its principal target, is the through truck traffic generated by Manchester Sand & Gravel and the NORCAP landfill. Whatever its purpose, the effect of the ordinance is to prohibit, through the medium of a weight limit, all through trucks weighing more than 15,000

---

[7] There are other streets that cross the South Windsor-East Windsor boundary line and are not prohibited streets in the ordinance; they cannot be reached, however, except by travel on a prohibited street.

pounds from every street in South Windsor that crosses the South Windsor-East Windsor boundary except Route 5 and Scantic Road. The result is local regulation of through truck traffic.

"The fact that a local ordinance does not expressly conflict with a statute enacted by the General Assembly will not save it when the legislative purpose in enacting the statute is frustrated by the ordinance." *Dwyer* v. *Farrell,* 193 Conn. 7, 14, 475 A.2d 257 (1984).

A review of the policy and purposes behind General Statutes § 14-298, as evidenced by the legislative history of the statute, is necessary to determine whether the legislature intended to vest the ultimate authority to regulate through truck traffic in the state traffic commission. See *Dwyer* v. *Farrell,* supra, 12; *Sullivan* v. *Town Council,* 143 Conn. 280, 284, 121 A.2d 630 (1956). In the 1955 legislative session, special acts were passed which gave the cities of Hartford and New Haven the power to regulate through truck traffic on local streets.[8] In the 1957 legislative session, both special acts were repealed.[9] In the same session, General Statutes (1949 Rev.) § 2517,[10] which established a state traffic commission and defined its duties, was repealed and the following language was added by substitute House Bill 501 to No. 331 of the 1957 Public Acts, the predecessor of General Statutes § 14-298[11] which con-

---

[8] See 27 Spec. Acts 644, No. 663; 27 Spec. Acts 235, No. 282.

[9] See 28 Spec. Acts 404, No. 324.

[10] See General Statutes (Cum. Sup. 1935) § 73c; General Statutes (Cum. Sup. 1937) § 119e.

[11] "[General Statutes] Sec. 14-298. STATE TRAFFIC COMMISSION. There shall be within the department of transportation a state traffic commission. Said traffic commission shall consist of the commissioner of transportation, the commissioner of public safety and the commissioner of motor vehicles. For the purpose of standardization and uniformity, said commission shall adopt and cause to be printed for publication regulations establishing a uniform system of traffic control signals, devices, signs and markings consistent with the provisions of this chapter for use upon the

tains similar language: "Said [state traffic] commission shall also make rules and regulations, in cooperation and agreement with local traffic authorities, respecting the use by through truck traffic on streets and highways within the limits of, and under the jurisdiction of, any city, town or borough of this state for the protection and safety of the public; and any rules and regulations so adopted may be amended in the same manner."

The statement of purpose accompanying substitute House Bill 501 at the time of its introduction in the General Assembly was "[t]o eliminate conflicting regulations arising from local restrictions as to the use of streets by through truck traffic." Substitute H.B. 501 (1957 Reg. Session). The statement of purpose of a bill, on its introduction into the legislature, may be consid-

---

public highways. Taking into consideration the public safety and convenience with respect to the width and character of the highways and roads affected, the density of traffic thereon and the character of such traffic, said commission shall also adopt regulations, in cooperation and agreement with local traffic authorities, governing the use of state highways and roads on state-owned properties, and the operation of vehicles including but not limited to motor vehicles, as defined by section 14-1, and bicycles, as defined by section 14-286, thereon. A list of limited-access highways shall be published with such regulations and said list shall be revised and published once each year. A list of limited-access highways opened to traffic by the commissioner of transportation in the interim period between publications shall be maintained in the office of the state traffic commission and such regulations shall apply to the use of such listed highways. *Said commission shall also make regulations, in cooperation and agreement with local traffic authorities, respecting the use by through truck traffic of streets and highways within the limits of, and under the jurisdiction of, any city, town or borough of this state for the protection and safety of the public.* Said commission may place and maintain traffic control signals, signs, markings and other safety devices, which it deems to be in the interests of public safety, upon such highways as come within the jurisdiction of said commission as set forth in section 14-297. The traffic authority of any city, town or borough may place and maintain traffic control signals, signs, markings and other safety devices upon the highways under its jurisdiction, and all such signals, devices, signs and markings shall conform to the regulations established by said commission in accordance with this chapter, and such traffic authority shall, with respect to traffic control signals, conform to the provisions of section 14-299." (Emphasis added.)

ered in determining its intent. *Seals* v. *Hickey,* 186 Conn. 337, 345, 441 A.2d 604 (1982); *Miller* v. *Board of Education,* 166 Conn. 189, 194, 348 A.2d 584 (1974).

In moving for the passage of substitute House Bill 501, after a favorable report from the committee on roads and bridges, Representative Gennaro W. Frate, chairman of the committee, stated: "This bill would permit the State Traffic Commission to route truck traffic in cooperation with the local officials of the towns involved. The reason for this bill, in the 1955 session there were two special acts passed, one for the city of Hartford and one for the city of New Haven, which gave these two cities the powers to route truck traffic. This year four more cities requested the same powers. *The committee on roads felt this power should be handled by the State Traffic Commission,* on page 10, file 840, there is a bill that would repeal these two special acts." (Emphasis added.) 7 H.R. Proc., Pt. 4, 1957 Sess., p. 2056. The statement of the legislator who reported the bill out of committee carries particular weight and deserves careful consideration. *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 15 n.4, 434 A.2d 293 (1980).

On the floor of the House of Representatives, just prior to the passage of substitute House Bill 501, Representative Frederick Pope, Jr., remarked: "Mr. Speaker, I would just like to say that I don't quite understand why there's so much question on this bill. I think it stands to reason that the State Traffic Commission has to be in on this; otherwise you would have 169 towns solving a state-wide problem in separate ways. You can well imagine that if one town routed the traffic on one road, and the town adjoining picked another road, you would have an almost impossible situation. So the State Traffic Commission has to come in in cooperation and agreement with the various towns to set up an over-all plan." 7 H.R. Proc., Pt. 4, 1957

Sess., p. 2059. Statements made on the floor of the house, although not controlling, may be judicially noticed and are a strong indication of legislative intent. *Robinson* v. *Unemployment Security Board of Review,* supra, 8; *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 245, 377 A.2d 305 (1977).

This court must construe statutes in a manner which gives effect to the apparent intention of the legislature. *In re Robert H.,* 199 Conn. 693, 704, 509 A.2d 475 (1986); *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 231, 477 A.2d 988 (1984). The apparent intention of the legislature, as evidenced by the legislative history of the relevant provision of General Statutes § 14-298, which was engrafted on that statute by substitute House Bill 501 in the 1957 session of the legislature, was to facilitate a harmonious routing of truck traffic through the various towns of this state in accord with rules and regulations made and adopted by the state traffic commission in cooperation with local traffic authorities.[12] It is equally apparent that, if that intention is to be carried out and the policy and purpose behind the legislative enactment is to be implemented, the ultimate authority to make such rules and regulations must rest solely with the state traffic commission. Otherwise, uncoordinated local ordinances which have the effect of prohibiting through truck traffic on certain streets, whether by imposing a locally determined weight limit or some other locally determined standard, would conflict with and totally frustrate the legislative intent. When the state has, by statute, demonstrated an intent to occupy a field of

[12] General Statutes § 14-298 is silent as to the procedure to be followed in the event local traffic authorities refuse to cooperate and agree with the state traffic commission with respect to the use of local streets and highways by through truck traffic. However, "[i]t is not our function to substitute our own ideas of what might be a wise provision in the place of a clear expression of the legislative will." *Frazier* v. *Manson,* 176 Conn. 638, 644, 410 A.2d 475 (1979).

regulation, as it has in this instance, a local ordinance that conflicts with or frustrates the purpose of the legislature in enacting the statute cannot stand. *Shelton* v. *Commissioner,* 193 Conn. 506, 517–18, 479 A.2d 208 (1984); *Dwyer* v. *Farrell,* supra, 14.

We conclude, therefore, that the legislature has, by statute, reserved to the state traffic commission the ultimate authority to regulate through truck traffic. Accordingly, the South Windsor ordinance, which has the effect of regulating through truck traffic by imposing a locally determined weight limit, is invalid.

Neither *Pizzuto* v. *Newington,* 174 Conn. 282, 386 A.2d 238 (1978), nor *C. White & Son, Inc.* v. *Rocky Hill,* 181 Conn. 114, 434 A.2d 949 (1980), require, as the defendant claims, a different result. *Pizzuto* held only that the town council of Newington could close Kimberly Road through the installation of concrete barriers at the Newington-West Hartford line to all traffic by adopting a resolution under the authority of General Statutes § 7-194.[13] The defendant argues that, since Newington could close a street to all traffic, a fortiori, towns must possess the lesser authority to impose weight limits which affect only certain vehicles using their streets. *Pizzuto,* however, is devoid of any indication that Kimberly Road was used by through truck traffic, as that term has been previously defined, or that its closure affected through truck traffic in the least. Further, the fact that Newington, under the circumstances of *Pizzuto,* might have the authority to close a street does not mean that South Windsor can regulate through truck traffic on its streets that remain open to other traffic.

*C. White & Son, Inc.,* concerned the validity of a Rocky Hill ordinance which prohibited commercial vehi-

---

[13] General Statutes § 7-194 granted specific powers to towns, cities and boroughs. Public Acts 1981, No. 81-219, transferred most powers under the section to § 7-148, effective October 1, 1982.

cles weighing more than 6000 pounds from using Forest Street, an interior street in Rocky Hill. That case is inapposite because it did not involve through truck traffic. *C. White & Son, Inc.* v. *Rocky Hill,* supra, 121 n.5. There, we held that the town of Rocky Hill could differentiate between *"non-through-traffic trucks weighing more than 6000 pounds and other vehicles under the authority of § 7-194 (8) and (17),"*[14] (emphasis added) and exclude such traffic from an interior street. *C. White & Son, Inc.* v. *Rocky Hill,* supra, 124–25. We noted, however, that in 1957 the General Assembly *"reserved authority to regulate through truck traffic to the state* in the following manner in General Statutes § 14-298: 'STATE TRAFFIC COMMISSION. . . . Said commission shall also make regulations, in cooperation and agreement with local traffic authorities, respecting the use by through truck traffic of streets and highways within the limits of, and under the jurisdiction of, any city, town or borough of this state for the protection and safety of the public.' '' (Emphasis added.) *C. White & Son, Inc.* v. *Rocky Hill,* supra, 124. We indicated, moreover, that since "the General Assembly only reserved *power* in the *state respecting the use of 'through truck traffic,'* not 'truck traffic' nor just 'traffic' ''; (emphasis added) id.; Rocky Hill could regulate *nonthrough truck traffic on an interior street.* Id., 124–25.

It is true that a municipality has broad powers relating to the use, maintenance and control of its streets and highways under General Statutes § 7-148.[15] A

---

[14] General Statutes (Rev. to 1979) § 7-194 (8) and (17) provide in part that "all towns, cities or boroughs which have a charter . . . shall have the following specific powers in addition to all powers granted . . . under the constitution and general statutes . . . (8) to . . . control and operate streets . . . (17) to regulate and prohibit the . . . use or opening of streets."

[15] See General Statutes § 7-148, titled Scope of Municipal Powers, particularly § 7-148 (b) (6) (C).

municipality, however, may only regulate and prohibit traffic and the operation of vehicles on its streets and highways in a manner not inconsistent with the General Statutes. See General Statutes § 7-148 (b) (7) (B) (i).[16] To allow South Windsor to regulate "through truck traffic" by a town ordinance would be inconsistent with § 14-298 which vests that power in the state traffic commission. We are not unsympathetic to the problem that through trucks apparently pose in South Windsor. The remedy, however, lies with the state traffic commission or the legislature.

There is no error.

In this opinion HEALEY, SHEA and F. FREEDMAN, Js., concurred.

PETERS, C. J., concurring. I disagree that the town of South Windsor was statutorily precluded from enacting an ordinance prohibiting all trucks exceeding a designated gross weight from traveling over designated town streets. The trial court implicitly concluded that there was no such blanket statutory disability when it ruled, in the plaintiffs' favor, that this ordinance was defective because it failed to provide truckers a reasonable alternative route and because it included exemptions that were unconstitutionally discriminatory in favor of town users and town providers of trucking services. The majority opinion does not reach these possible infirmities in the South Windsor ordinance.

In my view, the statutory analysis contained in the majority opinion fails to take sufficient account of the contrary analysis contained in this court's opinion in *C. White & Son, Inc.* v. *Rocky Hill,* 181 Conn. 114, 434

---

[16] General Statutes § 7-148 (b) (7) (B) (i) provides: "TRAFFIC. (i) Regulate and prohibit, in a manner not inconsistent with the general statutes, traffic, the operation of vehicles on streets and highways and off-street parking . . . ."

A.2d 949 (1980). The *C. White & Son, Inc.,* discussion of the relevant statutes does not turn on the artifact that the plaintiff's truck, in that case, happened not to be a through truck. Instead, that case emphasized that, in precluding local authorities from regulating through truck traffic, the legislature was concerned, as this court had been in cases such as *Adley Express Co.* v. *Darien,* 125 Conn. 501, 7 A.2d 446 (1939), and *Darien* v. *Stamford,* 135 Conn. 71, 60 A.2d 764 (1948), with local ordinances that unreasonably singled out through traffic for adverse regulation. *C. White & Son, Inc.* v. *Rocky Hill,* supra, 121–22, 124. The legislature has taken no further action to correct this interpretation, if indeed we were then in error, and its acquiescence is usually understood as validating our interpretation of what it had intended to accomplish. *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 63, 111 A.2d 4 (1955); *Forman Schools, Inc.* v. *Litchfield,* 134 Conn. 1, 6, 54 A.2d 710 (1947); *Cashman* v. *McTernan School, Inc.,* 130 Conn. 401, 408, 34 A.2d 874 (1943); *Coombs* v. *Darling,* 116 Conn. 643, 646, 166 A. 70 (1933).

In addition, the record in this case supports a narrower construction of General Statutes § 14-298 than that adopted by the majority opinion. The statute, by its own terms, only empowers the state traffic commission to act "in cooperation and agreement with local traffic authorities." Operationally, the commission has apparently construed this language to preclude any intervention without the consent of all of the towns affected by through traffic. In this case, the commission refused categorically to consider the request of the defendant town for an appropriate regulation of through traffic because the neighboring town, which benefitted from the use of the defendant's streets, refused to agree to any consideration of such a request, regardless of its terms. It seems to me unlikely that,

to avoid balkanization of through traffic, the legislature intended to deprive communities of any effective remedy whatsoever when they find themselves adversely affected by through trucks. Yet that appears to be the result of this court's holding today.

I would nonetheless uphold the judgment of the trial court, for a different reason. The trial court's determination that the defendant town's ordinance failed to provide the plaintiff truckers with a reasonable alternative route was either a finding of fact or so mixed a finding of fact and law that we should overturn it only if we are persuaded that it was clearly erroneous. Practice Book § 4061 (formerly § 3060D). Although a close question, I do not think that the trial court's resolution was clearly erroneous in view of the evidence and pleadings in the record as a whole.

Accordingly, I concur in the judgment that there is no error.