[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
Introduction and Factual Background
For the past several years, the plaintiff has resided with his wife in a mobile home at the defendant mobile home park in East Hartford, Connecticut.[1] The park contains 188 mobile homes. Mr. Cox's chosen means of transportation for over ten years has been a Honda 400 motorcycle. The defendant park has a number of rules and regulations for all residents including Rule No. 9 which prohibits the operation of motorcycles on the defendant's roadways. As such, the plaintiff is obligated to push his 351 pound vehicle uphill from the entrance of the park to his home — a distance of approximately 1/4 mile — each time he wishes to use the motorcycle. He has filed the present action seeking a declaratory judgment that Rule No. 9 is unlawful as it exceeds the authority given to mobile home park owners under the Connecticut General Statute.
 II.
Discussion
 A.
It is well established that in seeking declaratory relief, the plaintiff must first exhaust his administrative remedies. General Statutes 4-176; Savage v. Aronson,214 Conn. 256, 268 (1990). In the present case, the plaintiff did seek a determination on the validity of Rule 9 from the Commissioner of Consumer Protection but she declined to rule. (Exhibit K). The present action is, therefore, properly before this court. General Statutes 4-175. See Connecticut Mobile Home Association, Inc. v. Jensen's Inc., 178 Conn. 586 (1979).
B. CT Page 7572
The operation of mobile home parks is not a totally private concern — it is subject to some governmental overview. Chapter 412 of the General Statutes subjects the owners of such parks to a licensing scheme which, inter alia, requires operators to conform to building and fire safety codes as well as local ordinances and land use regulations, C.G.S. 21-68; maintain an attendant at the park, C.G.S. 21-69; deliver certain disclosure statements to residents, C.G.S. 21-70; precludes the restriction of suppliers to the residents, C.G.S.21-78; prohibits the owner from restricting the residents' right to sell, C.G.S. 21-79; and finally, controls the form and content of a rental agreement as well as the grounds and procedures for evictions, C.G.S. 21-80-83. See generally, Eamiello v. Liberty Mobile Homes Sales, Inc, 208 Conn. 620,638-650 (1988).
Operators are allowed to adopt rules for the park but they too are subject to certain restrictions.
Section 21-70 (b) states, in part;
 An owner from time to time, may adopt a rule or regulation, however described, concerning the resident's use and occupancy of the premises. Such rule or regulation shall be enforceable against the resident only if (1) the purpose of the rule of regulation is to promote the convenience, safety or welfare of the residents, preserve the owner's property from abusive use or make a fair distribution of services and facilities held out for the residents generally; (2) such rule or regulation is reasonably related to the purpose for which it is adopted; (3) such rule or regulation applies to all residents on the premises in a fair manner, provided reasonable exemptions may be made for good cause; (4) such rule or regulation is sufficiently explicit in its prohibition, direction or limitation of the resident's conduct to fairly inform him of what he shall or shall not do to comply, and (5) the resident has written notice of such rule or regulation at the time he enters into the rental agreement or when such rule or regulation is adopted. A rule or regulation having the effect of substantially modifying the terms of a rental agreement previously entered into by a resident shall not apply to such rental agreement without the written consent of the resident. CT Page 7573
It is against this statute, that the rule in contention, Rule 9, must be examined. Rule 9 states:
 9. MOTORCYCLES OF A TENANT SHALL BE ALLOWED TO BE PARKED ON THEIR LOT PROVIDED THE MOTOR IS KEPT OFF AND IT IS WALKED TO AND FROM YOUR LOT TO THE ENTRANCE DRIVE. YOUR GUEST WITH A MOTORCYCLE MUST PARK IT AT THE END OF THE ENTRANCE DRIVE AND WALK TO YOUR LOT. STARTING OF THE MOTOR TO TEST OR ACTUAL OPERATION IN THE PARK IS PROHIBITED AND THE PARK CAN BAR YOUR KEEPING THE MOTORCYCLE IN THE PARK.
 C.
The analyses begins with a determination on whether the purpose of the rule is to promote the convenience, safety or welfare of the residents. The testimony at trial from Robert Burns, the general manager of this park and its companion, Rivermead, was that the motorcycle prohibition was enacted to, inter alia, keep the park operating safely. He indicated that the private road network had a speed limit of 10 mph which was difficult to enforce. His two concerns about motorcycles were safety and noise. He believed that motorcycles increase the enforcement problems of the 10 mph limit. He stated, in response to a question as to what would prevent a rule on noise levels for all vehicles, that the park had a 10 mph rule but that it was an administrative problem.
The court heard testimony from a Mr. DeAngelis, involved with mobile home financing, that this park was well run and one of the "top five parks in the state". He testified that motorcycles should not be driven in the park because the higher density of a park requires more attention in driving safely. The court also heard testimony from certain park residents including Mr. Garrity who believed the motorcycles would disturb people at night; Mr. Slemovitz, who indicated that they caused a safety concern for children; Mrs. Slemovitz, who while not in favor of motorcycles would not object if they obeyed speed limits and made no more noise than other vehicles; and finally Mr. Knowlton, who objected in large part due to the noise factor. This court believes, at least initially, the prohibition to reduce alleged noise pollution would promote the welfare of the residents. The court further notes that the remaining portion of subsection one is inapplicable. There was no testimony that the rule was enacted to "preserve the owner's property from abusive use."
The court, however, heard no direct testimony that one plaintiff's or any other motorcycle is "noisy" to any extent CT Page 7574 that it would disturb or impinge on the welfare of the residents. Mr. Cox indicated that he was required by state motor vehicle law to have and, does have, a muffler as well as other safety equipment. He further testified that certain machines used at the park, such as wood chippers or blower vacs are noisier than motorcycles and that automobiles or trucks with faulty mufflers are also noisier.
 D.
One cannot examine Rule 9 solely in terms of subsection21-70 (b)(1), as it is also necessary to review the rule in light of the other subsections.
Subsection (2) requires that "such rule or regulation is reasonably related to the purpose for which it is adopted." This section is, of course, consistent with our law generally on the adoption of municipal regulations. See, Builders Service Corporation v. Planning Zoning Commission, 208 Conn. 267,283 (1988); Blue Sky Bar, Inc. v. Stratford, 203 Conn. 14,22 (1987). Whether municipal regulations meet the test of legitimacy must be determined in light of the circumstances shown to exist in a particular case. Wright v. Woodridge Lake Sewer District, 218 Conn. 144, 150 (1991). Challenging a regulation is not an easy task. The burden is clearly on the plaintiff. See Connecticut Theatrical Corporation v. New Britain, 147 Conn. 546, 553 (1960). In a case concerning liability of landowners for injuries sustained by certain vehicle (including motorcycle) operators, the court noted that:.
 The action involved here, the operation of a motorcycle on private property, does not implicate a fundamental right. Nor does it implicate a suspect class because operators or passengers of motorcycles or other all-terrain vehicles injured while riding on private property do not constitute a "`discrete and insular' minority for whom strict judicial scrutiny is necessary to uphold its rights. Warner v. Leslie-Elliott Constructors, Inc., 194 Conn. 129, 135 (1984). Graham v. Richardson, 403 U.S. 365. 372, (1971).
The testimony in this case is that Rule 9 was promulgated for two reasons: safety and noise. This court received no credible evidence that Rule 9, was needed for general safety reasons.[2] Any vehicle — truck, car, bus or motorcycle could exceed the internal speed limit. Indeed, according to Mr. Burns, four wheeled vehicles are not now complying with the existing speed limit; In Great Lakes CT Page 7575 Motorcycle Dealers Association, Inc. v. City of Detroit,196 N.W.2d 787 (Ct.App.Mich. 1972), a case with a somewhat similar fact pattern, the court rejected a motorcycle ban based on safety reasons. Apparently, Detroit residents were displeased with groups of motorcyclists frequently driving and congregating on certain streets. The city, therefore, enacted regulations to preclude operation of motorcycles in certain areas. In a challenge to the regulations, that court received evidence from, inter alia, a person who could no longer drive to his home and from a 74 year old man who had operated a motorcycle since 1922 and who could no longer visit his daughter in another part of the city. The court struck down the ordinance noting that:
 Since the problems of excessive speed and noise are not problems which relate solely to the nature and manner of operation of motorcycles, it is unreasonable and arbitrary to deny the use of the public streets to motorcycles, and yet, allow automobiles to continue to use those streets. The proper solution to the problems of excessive speed and noise is the enforcement of the speed and noise laws and ordinances.
See also, Rogers v. Town of Provincetown,424 N.E.2d 239, 242 (1981) in which a town ordinance restricting the renting of mopeds was held invalid since Provincetown had an effective means to deal with the "joyriding moped riders" who had become a public inconvenience and a unique hazard to the congested resort town. Likewise, in Springfield Park District v. Buckley, 488 N.E.2d 1071 (Ill.App. Dist. 1986), the court held a park district ordinance prohibiting the use of motorcycles on park roadways invalid. The court found that the problems relating to off road use and speeding could be addressed by a specific rather than a broad and arbitrary blanket prohibition.
It could be argued that as Great Lakes, Rogers, and Springfield Park District involve regulations promulgated by municipalities, the decisions are not controlling. That would be true if our legislature had not enacted Chapter 412. As discussed, mobile home park owners may only enact rules which meet certain guidelines. Thus, those cases are relevant to this situation.
Finally, in Manchester Sand Gravel Co. v. South Windsor, 203 Conn. 267, 270 (1987), our Supreme Court found a municipal ordinance prohibiting trucks with a certain weight from traveling over town roads invalid since regulations of CT Page 7576 such vehicles was left to the state traffic commission pursuant to General Statutes 514-298. The court noted that the impetus for the ordinance was the plaintiff's trucks and their travel to a certain landfill but the effect was the banning of all trucks. Id., 272-3. The court concluded that, "[u]ncoordinated local ordinances which have the effect of prohibiting through truck traffic on certain streets, whether by imposing a locally determined weight limit or some other locally determined standard would conflict with and totally frustrate the legislative intent. When the state has by statute demonstrated an intent to occupy a field of regulation. . . a local ordinance that conflicts with or frustrates the purpose of the legislature in enacting the statute cannot stand." Id. 276-77, citing Shelton v. Commission, 193 Conn. 506, 517-18 (1984).
Like the regulation of through truck traffic, the legislature has pre-empted the field of motor vehicle noise. While Mr. Cox indicated that there are no separate state motorcycle noise rules, a review of the motor vehicle regulations, however, indicates that General Statutes 14-80 (a) addresses maximum noise levels for all vehicles and instructs the Commissioner of Motor Vehicles to adopt regulations. Motorcycles are, of course, within the definition of motor vehicles, General Statutes 14-1 (46); (47). Pursuant to said mandate, the Commissioner promulgated maximum permissible noise levels for vehicles, effective December 27, 1978, at Section14-80a-1 et seq., Regulations of Connecticut State Agencies. Subsection 14-80a-4 (a)(d) provides the maximum permissible sound level readings in decibels for motorcycles during highway operation or while stationary. Violation of these standards is deemed to be an infraction. General Statutes 514-80a(d).
The decibel limits found in Section 14-80a-1 are maximum permissible sound level readings. A municipal or other similarly situated ordinance which is more stringent would be in conflict. Lizotte v. Conservation Commission, 216 Conn. 320,333 (1990); Aaron v. Conservation Commission, 183 Conn. 532,544 (1981).
 E.
Subsection (3) requires that the park rule apply to all residents in a fair manner. Based on the testimony at trial, this court is not convinced that Rule 9 meets this test. Mr. Cox indicated that those residents whose lots abut a town road are able to use their motorcycles despite Rule 9. Those owners are able to drive from the lot to a town/state road without using the park roadways. The problem, of course, is that one of these owners could operate a motorcycle, indeed a noisy one, perhaps to the discomfort of the neighbors, while other lot CT Page 7577 are able to use their motorcycles despite Rule 9. Those owners are able to drive from the lot to a town/state road without using the park roadways. The problem, of course, is that one of these owners could operate a motorcycle, indeed a noisy one, perhaps to the discomfort of the neighbors, while other lot owners are precluded from operating a quiet motorcycle. This situation suggests that the requirement of a fair distribution of facilities as set forth in subsection (1) is not met.
 F.
The remaining subsections, (4) and (5), are not really at issue in this case and need not be discussed. Section on 21-70
(C) however, requires that owners file certain documents with the Department of Consumer Protection and that "no. . . rules or regulations. . . shall be effective until such documents are filed. . . ." Robert Hurley of the Department of Consumer Protection, involved with mobile home parks since 1972, testified that he could not recall ever seeing a rule such as that in controversy. The defendant offered no independent testimony indicating that the rule had been filed with the Department. Without more, this court would have to find that the rule was invalid. See Eamiello v. Liberty Mobile Home Sales, Inc., supra, 633.
 III.
Conclusion
This court is sympathetic to those residents of the defendant park who wish to live in a peaceful and quiet neighborhood. Motorcycles can indeed be noisy — but that is true of other vehicles as well. Of course they can also be quiet. The existing rule enacted to prohibit the operation of legally registered motorcycles that comply with state noise regulations and that can comply with local speed restrictions does not distinguish between the two and does not meet the requirements of General Statutes 21-70 (b). Rule 9 is found to be invalid.
This court does not mean to suggest that the park is totally precluded from regulating motor vehicle (including motorcycle) operation. It simply cannot be done as it now exists.
Berger, J.