[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[MEMORANDUM OF DECISION]
The defendant was charged in the first part of a two part information with the crime of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor, in violation of Connecticut General Statutes § 14-227a(a), arising out of an incident which occurred in Groton on March 8, 1993. The defendant entered a plea of not guilty to that charge and elected to be tried by a jury of six. That jury convicted him of Operating Under the Influence on April 25, 1994.[1]
The defendant, having been previously advised that, upon such conviction, he would be prosecuted as a second offender, thereafter entered a plea of not guilty to the second part of the information. He elected to be tried to the court.
At the trial on the second part of the information, the state introduced without an objection a certified copy of the record of the conviction of the defendant on the charge of Operating Under the Influence in violation of Connecticut General Statutes § 227a, which conviction occurred in the Superior Court, G.A. 21 at Norwich on September 30, 1988, CT Page 4755 based on an incident which had occurred in Norwich on September 3, 1988. The parties also agreed that the court could take judicial notice of the proceedings giving rise to the defendant's conviction on April 25, 1994.
The only contested issue for this court is whether that portion of the Operating Under the Influence statute which provides for enhanced penalties for subsequent convictions within five years measures that time interval from the date of the first conviction to the date of the event that gives rise to the second conviction, or rather, as the defense urges, from the date of the first conviction to the date of the second conviction.[2] This issue is critical because, viewing the statute as suggested by the state, the event giving rise to the instant conviction for Operating Under the Influence occurred well within the five year period prescribed by the statute, and the evidence would therefore establish beyond a reasonable doubt that the defendant is guilty as charged in the second part of the information. Viewing the statute as urged by the defendant, however, and measuring the time interval from date of first conviction to date of second conviction, it is clear that the second conviction falls outside of the five year period and that the defendant would, therefore, be entitled to an acquittal.
Connecticut General Statutes § 14-227a(h) provides, in pertinent part:
 Any person who violates any provision of subsection (a) of this section shall . . . for conviction of a second violation within five years after a prior conviction for the same offense be fined not less than five hundred dollars nor more than two thousand dollars and imprisoned not more than one year, ten consecutive days of which may not be suspended or reduced in any manner, and shall have his motor vehicle operator's license or nonresident operating privilege supended [suspended] for two years . . .
The issue of how the five year time period is to be measured is apparently one of first impression in this state. Counsel for both the State and the defendant indicate that they are aware of incidents in which trial court judges have construed this provision one way or the other, but neither they nor this court have been able to find any written CT Page 4756 memorandum of decision on this subject. In [State v.Mattioli], our Supreme Court had occasion to construe C.G.S. Sec 14-227a(h) but in a footnote concluded that, under the facts of that case, "It is unnecessary to determine whether the language means that the period runs from conviction to conviction or conviction to violation . . ." because both the conviction and violation in that case had occurred within five years of the previous conviction. 210 Conn. 573, 580 n. 3 (1989).
The parties agree that the issue is one of statutory interpretation and that the outcome depends upon a determination of legislative intent. "The primary rule of statutory construction is that `[i]f the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature; [Houston v. Warden],169 Conn. 247, 251, 363 A.2d 121 (1975); [Hurlbut v.Lemelin], 155 Conn. 68, 73, 230 A.2d 36 (1967); and thus there is no need to construe the statute. [Bell v. Planning and ZoningCommission], 173 Conn. 223, 226, 377 A.2d 299 (1977); [Houston v. Warden], supra 251; [Hartford Hospital v.Hartford], 160 Conn. 370, 375-76, 279 A.2d 561 (1971).'" [State v. Smith], 194 Conn. 213, 221 (1988), quoting [Anderson v. Ludgin], 175 Conn. 545, 552, 400 A.2d 712
(1978).
"The words of [a] statute `are to be given their commonly approved meaning, unless a contrary intent is clearly expressed.' [Holmquist v. Manson], 168 Conn. 389, 393,362 A.2d 971 (1975); [State v. Antrum], 185 Conn. 118, 122,440 A.2d 839 (1981); General Statutes § 1.1." [State v.Kish], 186 Conn. 757, 764, 443 A.2d 1274 (1982).
It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. [Caltabiano v.Planning Zoning Commission], 211 Conn. 662, 666,560 A.2d 975 (1989). [Vaillancourt v. New Britain Machine/Litton],224 Conn. 382 (1993).
"`In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature.' [United Illuminating Co. v. Groppo], 220 Conn. 749, 755,601 A.2d 1005 (1992). `[W]hen the language of a statute is plain and unambiguous, we need look no further than the words CT Page 4757 themselves because we assume that the language expresses the legislature's intent.' [American Universal Ins. Co. v.DelGreco], 205 Conn. 178, 193, 530 A.2d 171 (1987).
Here, the legislature could have been more clear than it was, by saying, for example, ". . . for conviction of a second violation, [which violation occurs]] within five years . . ." or "for conviction of a second conviction, [which convictionoccurs] within five years . . ." (Emphasis added) It did not do so. "When the language of a statute is unclear, we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve." [Weinberg v. ARAVending Co.], 223 Conn. 336, 340-41, 612 A.2d 1203 (1992). [Mingachos v. CBS, Inc.], 196 Conn. 91, 104, 491 A.2d 368
(1985).
"In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result." [Sanzone v. Board of Police Commissioners],219 Conn. 179, 187, 592 A.2d 912 (1991). In considering the intended operation of a statute, courts must also assume that the legislature, in enacting the statute, had in mind other relevant legislation then in existence. [Danbury RubberCompany v. Local 402], 145 Conn. 53, 138 A.2d 783 (1958).
"It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent." [AllBrand Importers, Inc. v. Department of Liquor Control],213 Conn. 184, 194, 657 A.2d 1156 (1989); [Green v. Warden],178 Conn. 634, 637-8, 425 A.2d 128 (1979). A statute must be applied as its words direct. [New Haven v. United IlluminatingCo.], 168 Conn. 478, 485, 362 A.2d 785 (1975). Words in a statute must be given their plain and ordinary meaning and be interpreted in their natural and usual sense unless the context indicates that a different meaning was intended. [Caldor, Inc. v. Heffernan], 183 Conn. 566, 570, 440 A.2d 767
(1981).
"Although we recognize the fundamental principle that criminal statutes are to be construed strictly, it is equally fundamental that the rule of strict construction does not requyire [require] an interpretation that frustrates an evident legislative intent." [State v. Stevens], 224 Conn. 730, CT Page 4758 736-7, 620 A.2d 789 (1993). "In order to ascertain and give effect to the apparent intent of the legislature, we must examine the language of the statute in light of the purpose that it was designed to achieve." [Szudora v. Fairfield], 214 Conn. 552,557, 573 A.2d 1 (1990). "A construction that fails to attain a rational and sensible result bearing directly on the purpose legislature sought to achieve must be avoided." [State v.Grant], 33 Conn. App. 133, 141, ___ A.2d ___ (1993); [Jonesv. Mansfield Training School], 220 Conn. 721, 726, 601 A.2d 507
(1992). "When interpreting a statute, we will adopt the more reasonable construction over one that is unreasonable." [Turner v. Turner], 219 Conn. 703, 713, 595 A.2d 297 (1991). "Statutes should be construed so as not to reach an absurd or unreasonable result." [State v. Campbell], 180 Conn. 557,563, 429 A.2d 960 (1980).
Statements made on the floor of our legislative bodies, "although not controlling, may be judicially noticed and are a strong indication of legislative intent." [State v.Guckian], 27 Conn. App. 225, 237 (1992); [Elections ReviewCommittee of the Eighth Utilities District v. FOIC], 219 Conn. 685,695, 595 A.2d 313 (1991), quoting [Manchester Sand and Gravel Co.v. South Windsor], 203 Conn. 267, 276, 524 A.2d 621 (1987); [Winchester Woods Associates v. Planning and ZoningCommission], 219 Conn. 303, 310-11, 592 A.2d 953 (1991). However, the parties have not brought any of the applicable legislative history to this court's attention. Indeed, our Supreme Court examined the reports of the legislative debates on the floor of the General Assembly and the Senate in [State v.Mattioli], supra, but found that "the legislative history does not expressly address the statute's five year period. . . ."210 Conn. at 578.
Independent of the reported legislative history, however, there is good reason to infer that the legislature intended that the event, rather than the date of the subsequent conviction, should control the enhanced punishment provisions of the statute. It is unreasonable to conclude that the legislature would have intended that a defendant, charged with a subsequent offense occurring within the five year time period, could avoid enhanced punishment merely by entering a not guilty plea and parking his case on a congested jury docket until the five year period had run. Given the caseload of our criminal courts, and especially those of the urban geographical area courthouses, it is altogether possible that CT Page 4759 a defendant could be charged with a subsequent offense three or four years after the first conviction and, with no effort on his or her part other than the entry of a not guilty plea, delay the day of reckoning until after the expiration of the five year period. A defendant who actively wished to delay his or her trial could probably postpone the day of judgment even longer. Since the policy of the State of Connecticut is quite clearly to remove intoxicated drivers from the roadway and to enhance the sanctions for those who do not respond to a first conviction, to conclude that the legislature intended that the five year period be so easy to manipulate is unreasonable and inconsistent with the implied legislative purpose.
There is good reason to infer that the legislature intended a violation during the five years to trigger application of the statute, and an analogy may be found in violation of probation proceedings. A standard condition of probation is that a defendant not violate the law. It is the date of violation of the law rather than the date of conviction (or even the fact of conviction) that constitutes a violation of probation. See [Payne v. Robinson], 10 Conn. App. 395
(1987).
This is because it is a defendant's behavior during the period of probation that is critical to a determination of whether or not that defendant has been in compliance with the terms of his probation. It is not significant, in terms of the violation of probation proceedings, when the actual conviction for new criminal behavior occurs. Similarly, it is whether a defendant such as this one has gone five years from the date of his first conviction without operating a motor vehicle while under the influence that is determinative of whether or not he should be subject to enhanced penalties.
The date of conviction for the violation is but a fortuity. It is not reasonable to conclude that our legislature would have intended the imposition of an enhanced, mandatory minimum penalty to depend on such a fortuity.
The evidence therefore establishes beyond a reasonable doubt that the defendant has been convicted, on April 25, 1994, for a violation of C.G.S. 14-227a(a) on March 8, 1993, which violation had occurred within five years of his previous conviction for the same offense on September 30, 1988. CT Page 4760 Judgment will therefore enter finding the defendant guilty as to Part B of the Information.
Jonathan E. Silbert, Judge