[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[MEMORANDUM OF DECISIONRE: APPLICATION FOR PRETRIAL ALCOHOL EDUCATION PROGRAM]
The defendant was arrested on March 6, 1994 and charged with the crime of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor or Drugs in violation of CT Page 4761 Connecticut General statutes § 14-227a.[1] He has applied, pursuant to Connecticut General Statutes § 54-56g, for entry into the pretrial Alcohol Education System. That statute provides, in pertinent part:
 (a) There shall be a pretrial alcohol education system for persons charged with a violation of Section 14-227a. Upon application by any such person for participation in such system and payment to the court of an application fee of fifty dollars, the court shall, but only as to the public, order such information or complaint to be filed as a sealed information or complaint, provided such person states under oath, in open court or before any person designated by the clerk and duly authorized to administer oaths, under penalties of perjury that he has never had such system invoked in his behalf and that he has not been convicted of a violation of Section 53a-56b or 53a-60d, a violation of subsection (a) of Section 14-227a before or after October 1, 1981, or a violation of subdivision (1) or (2) of subsection (a) of Section 14-227a on or after October 1, 1985, [and that he has not been convicted in any other state at any time of an offense the essential elements of which are substantially the same as] Section 53a-56b or 53a-60d or [subdivision (1) or (2) of subsection (a) of Section 14-227a]. Unless good cause is shown, a person shall be ineligible for participation in such pretrial alcohol education system if his alleged violation of Section 14-227a caused the serious physical injury, as defined in section 53a-3, of another person. The fee imposed by this subsection shall be credited to the criminal injuries compensation fund established by Section 54-215. (Emphasis added)
In making his application, the defendant indicated that he had been previously convicted of a violation of Maine Statutes Sec. 1312-B, Criminal Violation of Operation Under the Influence of Intoxicating Liquor or Drugs or With an Excessive Blood-alcohol Level, but he maintains that the Maine conviction was not for an offense "the essential elements of which are substantially the same as . . . subdivision (1) or (2) of subsection (a) of Section 14-227a. CT Page 4762
29 M.R.S.A. § 1312-B provides, in pertinent part:
 1. Offense. A person is guilty of a criminal violation under this section if he operates or attempts to operate a motor vehicle:
 A. While under the influence of intoxicating liquor or drugs or a combination of liquor and drugs; or
 B. While having 0.08% or more by weight of alcohol in his blood.
The defendant notes that unlike the Connecticut Statute, Maine law permits a conviction for operating under the influence if a defendant operates a motor vehicle with a blood-alcohol content of .08 or greater, whereas the Connecticut statute requires a reading of .10 or greater to support a conviction. A .08 reading in Connecticut would be evidence of the offense of Operation While Impaired in violation of Connecticut General Statutes 14-227a(b), an infraction. The defendant also notes that the penalty provisions contained in Section 1312-B-2 of the Maine statute differ in numerous respects from our own. On this basis he argues that the elements of the Maine statute are not substantially the same as that of the Connecticut Statute, and that he is, therefore, eligible for the Program.[2] Because the defendant is otherwise statutorily eligible for the program, and because, based on the material presented to the court during oral argument, the court would be inclined to exercise its discretion in favor of admission to the program if the defendant is statutorily eligible, the interpretation of the phrase "the essential elements of which are substantially the same as . . . section 14-227a(a)" will determine the outcome of the defendant's application for that Program.
Counsel for the defendant and for the state have not offered, nor has this court been able to find, any reported cases concerning this issue, which is apparently one of first impression. Similarly, counsel had not brought to the court's attention any unpublished decisions on this subject, although this court is aware of its own unreported Memorandum of Decision in [State v. Marion L. Sanders], geographical area 10 at New London, Docket No. MV91-0597230 (April 14, 1992), and CT Page 4763 [State v. Steve G. Spaulding], geographical area 10 at New London, Docket No. MV91-0595997 (April 14, 1992), in which this court had occasion to construe South Carolina Code 56-5-2930 in the context of two similar applications for the Alcohol Education Program. Because the issue continues to arise in one context or another and because this court perceives a need for some uniformity in the application of the statute, the court is reducing its opinion in this case to writing in the hope that whether accepted, rejected, modified, reversed or affirmed, it will at least provide a basis for discussion to other courts faced with the same issue.
On the outset, the court notes that each of the fifty states has its own version of a "drunk driving" statute. No statute has been found that contains the precise wording of the Connecticut statute, although all of them have in common the basic elements of "operation," a "vehicle",[3] and the concept of being "under the influence", which may be assessed behaviorally or chemically.
Connecticut General Statutes § 54-56g, the Pretrial Alcohol Education System statute, forbids entry into the Program to one who, [inter alia], has been "convicted in any other state at any time of an offense the essential elements of which are substantially the same as . . . subdivision (1) or (2) of subsection (a) of section 14-227a." Recognizing the differences in wording among "drunk driving" statutes around the country, our legislature provided that only those convicted in another state of an offense whose [essential] elements are substantially the same as those of our own statute would be forbidden entry into the Program. Much, therefore, depends on the meaning of the word "essential" within the context of this statute.
"The primary rule of statutory construction is that `if the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature; [Houston v.Warden], 169 Conn. 247, 251, 363 A.2d 121 (1975); [Hurlburt v. Lemelin], 155 Conn. 68, 73, 230 A.2d 36
(1967); and thus there is no need to construe the statute. [Bell v.Planning and Zoning Commissioner], 173 Conn. 223, 226,377 A.2d 229 (1977); [Houston v. Warden, supra], 251; [HartfordHospital v. Hartford], 160 Conn. 370, 375-76, 279 A.2d 561
(1971).'" [State v. Smith], 194 Conn. 213, 221 (1988), quoting [Anderson v. Ludgin], 175 Conn. 545, 552, CT Page 4764400 A.2d 712 (1978).
"The words of (a) statute `are to be given their commonly approved meaning, unless a contrary intent is clearly expressed.' [Holmquist v. Manson], 168 Conn. 389, 393,362 A.2d 971 (1975); [State v. Antrum], 185 Conn. 118, 122,440 A.2d 839 (1981); General Statutes Section 1.1". [State v.Kish], 186 Conn. 757, 764, 443 A.2d 1274 (1982).
When the wording of a statute is not absolutely clear, however, it may be necessary to look behind the wording of the statute to the intent of its drafters. "When we are confronted, however, with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself . . . the legislative history and circumstances surrounding the enactment of the statute . . . and the purpose the statute is to serve". [Rhodes v. Hartford], 201 Conn. 89,93, 513 A.2d 124 (1986); [Phelps Dodge Copper Products Co. v.Groppo], 204 Conn. 122, 128, 527 A.2d 672 (1987).
"Essential" is defined in Webster's New World Dictionary, Second College Edition, as "of or constituting the intrinsic, fundamental nature of something; basic, inherent." The "essential" elements of subsection (a) of Section 14-227a are contained in that statute's first sentence: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both." The three essential elements, therefore, are: (1) [operation] of (2) a [motor vehicle] (3) [while under the influence ofliquor and/or drugs]. (Emphasis added.) The provisions of the remainder of this section clarify the location at which the offense must occur (public highway, private road for which a speed limit has been established, parking area for ten cars or more or school property), and further specify that "under the influence" may be established either by the subjective standards of subsection (1) or by the objective measurement of blood alcohol content described in subsection (2).
The defendant correctly notes that there are differences between the Connecticut and the Maine statutes, as indicated above. In particular, he points to the fact that the Maine statute provides for conviction on the basis of a Blood Alcohol Content of .08 at the time of operation, whereas our own statute sets the threshold at .10. At oral argument, however, the defendant conceded that his own blood alcohol CT Page 4765 content as measured following the arrest that led to his Maine conviction, was .11, which would have constituted a violation in this state as well.
The defendant also emphasizes the different penalties provided by the two statutes for conviction as a first offender, and he notes that the "judgment and commitment" form from the Maine Superior Court indicates the offense of conviction as 29 M.R.S.A § 1312-B [2-A] (emphasis added), which is actually the penalty section of the Maine Operating Under the Influence statute. Whether the notation in the "judgment and commitment" is a typographical error (the elements of the offense are in fact spelled out in subsection 1 of Section 1312-B rather than subsection 2) or whether the listing of the offense of conviction by reference to its penalty provisions is standard procedure in Maine, this claim lacks merit. Counsel has offered no support for the contention that the penalties provided by the statute are among the "elements of the offense", essential or otherwise, nor is this court aware of any statutory or case law that would make the authorized penalties an element of the offense.
A possible standard for determining whether the essential elements of the foreign statute are substantially the same as ours would be whether or not the defendant, if he or she committed the same acts in Connecticut, rather than a foreign state, would have been convicted under Section 227a(a). In the absence of accurate official records, however, such a standard may place too heavy a premium on the defendant's recollection. Moreover, not having been trained in the law, his recollection may bear little relation to the facts necessary for conviction. Such an approach would result in an uneven application of the law in that it would rely on the quality of a defendant's memory or the fortuity of whether or not a usable transcript exists.
Indeed, most convictions for operating under the influence result from guilty pleas rather than trials, and that there is normally no evidence of record in these cases. The factual bases for the pleas stated by the prosecutor are frequently truncated and designed to track the wording of the state statute in question. As a result, the out-of-state prosecutor might not include reference to specific facts that would have been required for a conviction under the Connecticut Statute. Moreover, the erasure statutes of many CT Page 4766 states would make it impossible for a defendant even to obtain a copy of the transcript or record of conviction.
On balance, this court is persuaded that rather than focusing on the factual basis for the conviction, it is required by the statute, as amended in 1989, to focus on the essential elements only. If the essential elements of the foreign statute are clear, and if they are substantially the same as our own, the defendant is ineligible for the Program. The Legislature inserted the phrase "convicted in any other state of an offense the essential elements of which are substantially the same . . ." in 1989. Although less than artfully drafted, it is clear that the amendment was enacted to address a patently unfair situation which existed under the statute as then in effect. A defendant previously convicted of operating under the influence under our law would be statutorily ineligible for the Program, whereas one who had been convicted in another state would be able to qualify for admission. Although it cannot be realistically presumed that the legislature was conversant with the precise language of each of the drunk driving statutes of the fifty states, it can be presumed that it was aware of the fact that all of the sovereiegn [sovereign] states had enacted legislation making operation under the influence a crime and that there were differences in language among those statutes. In that context, the phrase "essential elements of which are substantially the same" renders apparent the legislature's intention to exclude someone who, in another state, had done essentially that which is proscribed by Sec. 14-227a, namely (1) operated (2) a motor vehicle (3) while under the influence of liquor or drugs.
A review of the legislative history of the amendment confirms this analysis. Statements made on the floor of the House of Representatives and Senate, "although not controlling, may be judicially noticed and are a strong indication of legislative intent." [State v. Guckian],27 Conn. App. 225, 237 (1992); [Elections Review Committee of the EighthUtilities District v. FOIC], 219 Conn. 685, 695, 595 A.2d 313
(1991), quoting [Manchester Sand and Gravel Co. v. SouthWindsor], 203 Conn. 267, 276, 524 A.2d 621 (1987); [Winchester Woods Associates v. Planning and ZoningCommission], 219 Conn. 303, 310-11, 592 A.2d 953 (1991). Comments by both Senators and Representatives concerning House Bill 7242, which became Public Act 89-110 and eventually the amendment to Section54-56g(a), are most explicit regarding the legislature's intent. CT Page 4767
Senator Avallone: ". . . it makes people who have been convicted of DWI in other states ineligible for pretrial programs." S.Proc. April 19, 1989, p. 1425.
Representatives Belden: ". . . this amendment would put into the statute that if an individual had been convicted in any other state at any time of an offense that [sic] essential elements of which are substantially the same as those in Connecticut, that he would — that would count as his bite of the apple, so to speak, and that he would not be eligible in Connecticut for pretrial education program and would move on to the next offense." H.R. Proc. April 16, 1989, p. 2839, 2840. "The bill as amended will now indicate that when somebody is arrested for drunk driving in Connecticut and they go through the process, if they have been through the process in some other state, guess what, they're not going to be able to go through our little education program. I think that's a very good step. We'll hopefully protect the public a little more and I appreciate the previous vote very much on behalf of those who do not drink and drive." H.R. Proc. April 16, 1989, pp. 2845-6.
Therefore, this court holds that the three "essential elements" of Connecticut General Statutes Section 14-227a(a) are (1) operation; of (2) a motor vehicle, (3) while under the influence of liquor and/or drugs. If a defendant in this state has been convicted in any other state of an offense with those essential elements, there exists at least a rebuttable presumption that the defendant is ineligible for Connecticut's Pretrial Alcohol Education Program. Those three essential elements are explicitly included in 29 M.R.S.A. 1312-B, and the defendant is, therefore, presumed by virtue of his conviction to be ineligible for the Program.
The court can conceive, however, of circumstances where, despite the fact that the foreign statute under which a defendant was convicted appears to contain substantially the same essential elements as Section 14-227a(a), a defendant might nevertheless be able to make factual showing that the actual course of conduct which led to his conviction did not include all of the essential elements of Section 14-227a(a). Thus, for example, the defendant in [State v. Dellinger], supra, might well be able to demonstrate his eligibility for our Alcohol Education Program by proving to the court's CT Page 4768 satisfaction that his North Carolina conviction was the result of his being drunk while astride a horse rather than behind the wheel of a car. As this defendant has not yet proposed to submit such evidence, the court will leave to another day a determination of the proper standard of proof required to rebut the presumption of ineligibility.
The defendant's application for admission into the Pretrial Alcohol Education Program is, therefore, denied, without prejudice.
Jonathan E. Silbert, Judge