SUBSEQUENT INJURY FUND *v.* BILLY EARL
SLATER ET AL.

[No. 854, September Term, 1974.]

*Decided June 27, 1975.*

The cause was argued before MORTON, POWERS and MENCHINE, JJ.

*J. Deems Barnard, Special Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *William H. Kable, Special Assistant Attorney General,* on the brief, for appellant.

*Irving B. Klitzner,* with whom was *Millard Esterson* on the brief, for appellee Billy Earl Slater.

MENCHINE, J., delivered the opinion of the Court.

This is an appeal by the Subsequent Injury Fund from a judgment of the Circuit Court for Prince George's County reversing a decision of the Workmen's Compensation Commission.

The facts, necessary for understanding of the issue submitted for our decision, are these: Billy Earl Slater (claimant), a retired Navy veteran with twenty years of active service, who was receiving $245.00 monthly [1] for 40% disability of his body, sustained an accidental injury arising out of and in the course of his employment. He filed claim against Charles L. Cooper, t/a Cheverly City Service, and his insurer, Erie Insurance Exchange (Employer and Insurer). Employer and Insurer impleaded the Subsequent Injury Fund. After hearing, the Workmen's Compensation Commission (Commission) determined that claimant had sustained a permanent partial disability under "Other Cases" of 60% industrial loss of use of the body of which 20% was reasonably attributable to the accidental injury and 40% due to a pre-existing condition. The Commission determined further "that a prior award had been made to the claimant for 40% of the body by the U. S. Navy; therefore the Subsequent Injury Fund has no liability in this case." Claimant appealed.

---

1. See U.S.C.A. Title 10, § 1201 and 1401.

The trial court, concluding as a matter of law that the Commission erroneously had excused the Subsequent Injury Fund from liability to claimant for the 40% pre-existing disability, reversed the decision of the Commission. The Subsequent Injury Fund in its appeal to this Court thus states the narrow issue submitted to us for resolution:

"Was the Commission correct in allowing credit for a prior award made by a similar Commission; the United States Navy Physical Evaluation Board for a previous permanent impairment within the meaning of Article 101, § 66 (5)?"

It is undisputed that the present disability of the claimant is the product of the combined effect of pre-existing disability and the accidental injury for which workmen's compensation benefits were claimed and that the total present disability exceeds 50% of the body as a whole. In sum, it is condeded that *but for* the provisions of Article 101, § 66 (5), the claimant "would be entitled to receive * * * additional compensation * * * for the combined effects of the impairment and subsequent injury." [2]

---

**2.** Article 101, § 66 (1) reads in pertinent part as follows:

"§ 66. SUBSEQUENT INJURY FUND.

(1) *Permanent disability or death due to combined effects of impairment and subsequent injury.* — Whenever an employee who has a permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment, incurs subsequent disability by reason of a personal injury, for which compensation is required by this article resulting in permanent partial or permanent total disability that is substantially greater by reason of the combined effects of the impairment and subsequent injury than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall be liable only for the compensation payable under this article for such injury. However, in addition to such compensation to which the employer or his insurance carrier is liable, and after the completion of payments therefor provided by this article, the employee shall be entitled to receive and shall be paid additional compensation from a special fund to be known as the 'Subsequent Injury Fund,' created for such purpose, in the manner described hereafter in this section, it being the intent of this section to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury

Article 101, § 66 (5) reads as follows:

"(5) *Representation of fund before Commission; findings required in awards; prior awards to be considered.* — In any case which shall come before the Workmen's Compensation Commission involving payments from the fund, it shall, request the Attorney General to furnish a member of his staff to represent the fund in hearings before it. In any award it shall make from the fund, the Commission shall specifically find the amount the injured employee shall be paid weekly, the number of weeks' compensation to be paid, the date upon which payments from the fund shall begin, and, if possible, the length of time such payments shall continue. *In making any award from the fund for a subsequent injury, the Commission shall consider any prior award made by the Commission, or by a similar commission in any other state or in the District of Columbia, in determining the amount to be awarded for such subsequent injury.*" (Emphasis in body of section added.)

Thus, the true issue is whether disability payments made to former naval personnel after determination by a Naval Evaluation Board constitute a "prior award made * * * by a similar commission in any other state or in the District of Columbia" such as the Commission is required by law to off-set against the liability otherwise attaching to the Subsequent Injury Fund. The Commission concluded that they did. The trial court concluded that they did not. See: *Subsequent Injury Fund v. Chapman,* 11 Md. App. 369, 377, 274 A. 2d 870, 874, affirmed 262 Md. 367.

We have been referred to no similar case in this or any

---

resulting in permanent total disability or a substantially greater permanent partial disability.

"Benefits from the Subsequent Injury Fund hereunder shall not be payable unless the combined effects resulting from a previous impairment and a subsequent accidental injury result in a permanent disability exceeding 50 per centum (50%) of the body as a whole."

other jurisdiction, nor have we found one. Accordingly, in this case of first impression we are compelled to seek guidance from such appellate decisions dealing with statutory construction as seem to offer assistance in the determination of the meaning and effect of the language used in § 66 (5).

In *Md.-National Capital Park and Planning Comm., et al. v. Mayor and Council of Rockville*, 272 Md. 550, 325 A. 2d 748, it was said at 555-56 [752]:

> "The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent, *Radio Com., Inc. v. Public Serv. Comm'n*, 271 Md. 82, 93, 314 A. 2d 118 (1974); *Scoville Serv., Inc. v. Comptroller*, 269 Md. 390, 393, 306 A. 2d 534 (1973); *Silberman v. Jacobs*, 259 Md. 1, 267 A. 2d 209 (1970); *Atlantic, Gulf v. Dep't of Assess. & T.*, 252 Md. 173, 249 A. 2d 180 (1969); and in ascertaining that intent, the Court considers the language of an enactment in its natural and ordinary signification, *City of Gaithersburg v. Mont. Co.*, 271 Md. 505, 511, 318 A. 2d 509; *Grosvenor v. Supervisor of Assess.*, 271 Md. 232, 315 A. 2d 758 (1974); *Radio Com., Inc. v. Public Serv. Comm'n, supra.* If there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the legislature, *Scoville Serv., Inc. v. Comptroller, supra; Atlantic, Gulf v. Dep't of Assess. & T., supra.*"

In *Amalgamated Cas. Ins. Co. v. Helms*, 239 Md. 529, 212 A. 2d 311, it was said at 535-36 [315-16]:

> "Of course, the cardinal rule of statutory construction is to seek and carry out the true intention of the Legislature. *Casey Devel. Corp. v. Montgomery County*, 212 Md. 138. And in so doing, it sometimes becomes necessary, under unusual circumstances, to look to the spirit and purpose of an enactment. *Cearfoss v. State*, 42 Md. 403; *Bickel v. Nice*, 173 Md. 1; *Smith v. Higinbothom*, 187 Md.

115. But Chief Judge Marbury very clearly pointed out in *Clark v. Tawes*, 187 Md. 195, that the rule that real intent must prevail over literal intent is adopted only when the literal words of a statute say something that the Legislature could not possibly have meant. He said that this Court has repeatedly stated that as a general rule a court may not surmise a legislative intention contrary to the plain language of a statute, nor insert or omit words to make the statute express an intention not evidenced in its original form. See also *Pressman v. State Tax Comm.*, 204 Md. 78 and cases cited therein; and *Fowel v. State*, 206 Md. 101. And, if a statute be plain and free from ambiguity, its application may not be enlarged or extended by construction. *Grimm v. State*, 212 Md. 243.

"In other words, the courts, in the absence of ambiguity, should, as a general rule, confine themselves to a construction of a statute as written, and not attempt, under the guise of construction to supply omissions or remedy possible defects in the statute, or to insert exceptions not made by the Legislature."

Equally well recognized is the concomitant rule applicable to interpretation of the Workmen's Compensation Act, namely, that it is to be liberally construed in favor of injured employees as the provisions will permit in order to effectuate its benevolent purposes. *Bethlehem Sparrows Point Shipyard v. Hempfield*, 206 Md. 589, 112 A. 2d 488.

We are persuaded that allowances paid in connection with the provisions of Acts of Congress providing disability retirement benefits to members of the Armed Forces of the United States, were not intended by the Maryland Legislature to be equated with a "prior award made by * * * a similar commission in any other state or in the District of Columbia."

It is true that the claimant will receive greater benefits than he would have received had his pre-existing disability

been the subject of an award by a workmen's compensation commission in this or any other state or the District of Columbia. This circumstance is without legal significance. What was said in *Bata Shoe Co., et al. v. Chvojan*, 188 Md. 153, 52 A. 2d 105, seems pertinent here:

> P. 159 [108] "the fact that a claimant, who receives compensation for both a first and a second injury, may ultimately receive more than the maximum compensation allowable for a single injury, is not material. The Compensation Law fails to meet the test of logical consistency in many respects. It could hardly be otherwise, for the original Act was not constructed on any system of scientific classification, and subsequent amendments have been directed chiefly towards modification of particular details. It is our duty to construe the Act, not to revise it."

As we said in *Thomas v. Baltimore County Revenue Authority*, 23 Md. App. 261, 326 A. 2d 750, at 267 [753]:

> "If the Fund desires amendment of the statute, it should seek that amendment through the legislative process and not through the courts."

Appellant's reliance upon *Leach v. John T. Clark & Son*, 20 Md. App. 109, 314 A. 2d 689, is misplaced. In Leach, we said at 115 [693]:

> "* * * when the Florida Commission notified the City of Tampa, as employer, that the minimum it must pay Leach was the amount allowable under the Florida compensation law, and required the establishment of a reserve against this liability, it made an award. That the Florida authorities chose to accomplish this result by way of correspondence between the state agency and the city government, rather than by a formal order, in no way impairs the effect of the commission's action to assure that Leach would receive the full benefit of the compensation law."

In the subject case, the benefits payable to the claimant under the Act of Congress clearly do not fall within the limiting language of § 66 (5). Such payments may be brought within its meaning only if we revise the statute. We may not do so.

*Judgment affirmed.*
*Appellant to pay costs.*