527 A.2d 54

**John M. GRAY**

v.

**SUBSEQUENT INJURY FUND.**

**No. 1583, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

June 15, 1987.

Paul N. Hollifield (A. Douglas Owens, on the brief), Baltimore, for appellant.

Irving B. Klitzner (J. Joseph Curran, Jr., Atty. Gen., Sophia L. Swope and George E. Barrett, Asst. Attys. Gen., on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and BLOOM and KARWACKI, JJ.

GILBERT, Chief Judge.

No one disputes that John M. Gray is totally and permanently disabled within the meaning of the Maryland Workmen's Compensation Act.

No one disputes that Mr. Gray sustained an accidental injury in October 1978 and that, as a result, 40 percent of the 100 percent total permanent disability is attributable to that particular accident.

No one disputes that Mr. Gray's employer, Mass Transit Administration, is responsible for the payment of $13,600.[1]

No one disputes that Mr. Gray also suffers from asthma, loss of vision in his right eye, hypertension and "type II Diabetes mellitus and chronic bronchitis and associated emphysema."

No one disputes that Mr. Gray received prior workmen's compensation awards for injury in March 1973 to his back. (settled for $2,500), injury in November 1973 to his knee

---

1. The $13,600 award is calculated on the basis of 40 percent of 500 weeks total permanent disability benefits or 200 weeks. The average weekly wage in 1978 was approximately $204. Total permanent disability benefits would be one-third of $204 or $68 per week. $68 times 200 weeks equals $13,600.

(settled for $1,050), and an injury in May 1977 to his back (settled for $12,000), or that the total settlements amount to $15,550.

No one disputes that the maximum amount payable for total permanent disability should not exceed $45,000.[2]

What is disputed is the Commission's order that the Subsequent Injury Fund pay to Mr. Gray the sum of "$31,400 representing the compensation payable for the pre-existing condition" without allowing the Fund credit for the $15,550 previously paid under the 1973 and 1977 awards.

The refusal of the Commission to allow the Fund credit against the permanent total award in favor of Mr. Gray led the Fund to the Circuit Court for Baltimore City. There the Fund moved for summary judgment on the ground that, as a matter of law, it was entitled to credit of $15,550 because of Mr. Gray's prior awards. Judge Thomas Ward granted the Fund's motion. Obviously dissatisfied with that turn of events, Mr. Gray has journeyed to this Court where he asserts that the hearing judge was incorrect.

The Subsequent Injury Fund was created by Md.Ann. Code art. 101, § 66. The avowed purpose of the statute is declared in § 66(1) to be "to make the total payments to which ... [an] employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury." The Fund, in the words of *Subsequent Injury Fund v. Pack,* 250 Md. 306, 308, 242 A.2d 506 (1968), was established

"to persuade the employer to employ the handicapped individual by limiting the liability, which the employer may otherwise have incurred, in the event the previously

---

**2.** Notwithstanding the fact that the amount paid for total permanent disability shall not exceed $45,000, the Act provides "that if the employee's total disability shall continue after a total of $45,000.00 has been paid, then further weekly payments at the rate previously paid shall be paid to him during such disability." Md.Ann.Code art. 101, § 36(1)(a).

disabled or injured individual sustained a subsequent occupational injury, although not of itself disabling, but which, coupled with previous impairment, rendered the individual permanently disabled, thus exposing the employer to liability for the cumulative effect of the prior and subsequent injuries."

To assure itself that an employee would not be compensated twice for the same injury, the Legislature commanded that

"[i]n making any award from the fund for a subsequent injury, the Commission shall consider any prior award made by the Commission ... in determining the amount to be awarded for such subsequent injury."

Md.Ann.Code art. 101, § 66(5).

This Court applied that subsection in *Subsequent Injury Fund v. Chapman*, 11 Md.App. 369, 274 A.2d 870 (1971), where we approved of the Fund's being entitled to a credit of $9,075 against an award of $19,500. The $9,075 had been paid to Chapman as a result of previously incurred permanent partial disability awards.

Later in *Subsequent Injury Fund v. Slater*, 27 Md.App. 295, 340 A.2d 405 (1975), the Court considered whether a disability payment received from the Department of the Navy was a prior award within the meaning of Md.Ann. Code art. 101, § 66(5). Speaking through Judge Menchine, we concluded that the language of § 66(5) did not embrace "Acts of Congress." We said that "disability retirement benefits [paid] to members of the Armed Forces of the United States, were not intended ... to be equated with a 'prior award made by'" a Workmen's Compensation Commission in this or any other State, including the District of Columbia. *Slater*, 27 Md.App. at 300, 340 A.2d at 408.

That prior compensation payments may be allowed the Fund as a credit in any award made against it seems beyond dispute. The issue before us becomes, does the Commission have the authority to withhold that credit?

When the instant matter was before the Commission, the prior awards were treated thusly:

"The Commission finds ... that the claimant was awarded compensation under claim A573889 in the amount of $2,500.00, under claim A579887 in amount of $1,050.00 and under claims A662947 and A679502 in the amount of $12,000.00 for a total of $15,550.00; *and after having considered same, the Commission has concluded to deny the Subsequent Injury Fund credit inasmuch as continuing benefits are being awareded [sic] in this case.*" (Emphasis supplied).

No explanation for the denial of the credits was offered by the Commission.

The Commission erred when it "considered" the prior payments but then opted to deny them as a credit to the Fund. We have no doubt that the Commission did actually consider, *i.e.*, weigh or think about the prior awards. The word "consider," however, has a number of meanings and is not limited solely to deliberating, studying, thinking carefully, or reflecting. It also means "to take into account; make allowance for." *The American Heritage Dictionary of the English Language* (1969). It is that particular meaning the Legislature had in mind when it wrote the word "consider" into the Act. The Legislature meant the word "consider" to mean "make allowance for," a sort of synonym for deduction. When it directed the Commission to consider prior awards, it simply meant that they were to deduct those awards from any amount assessed against the Subsequent Injury Fund. We interpret the Legislature's directive to "consider any prior award" as a fiat to deduct the amount of prior awards from an assessment against the Fund. Our interpretation is strengthened by Laws 1986, Chapter 767, which amended § 66(5) to provide, in pertinent part:

"In making any award from the fund for a subsequent injury in cases of permanent disability under §§ 36(1), 36(3), and 36(4) of this article, the Commission shall deduct from any award made against this fund the dollar amount of any prior award for permanent disability,

made by or under any prior final compromise and settlement agreement approved by this Commission, or by a similar commission in any other state or the District of Columbia, provided the prior permanent disability contributes to the claimant's current permanent disability."

Contrary to Mr. Gray's assertions, there is no factual dispute over whether he sustained prior injuries for which he was paid a total of $15,550 as permanent partial disability. If, as here, total permanent disability is valued at $45,000, Mass Transit contributes $13,600 and the prior awards total $15,550, the balance to be paid Mr. Gray by the Fund is $15,850. Under Mr. Gray's interpretation he would receive $13,600 from Mass Transit and $31,400 from the Fund plus the $15,550 he has already received for a total of $60,550 compensation when, in fact, he is only entitled to a total of $45,000.

We perceive no error in the trial court's granting a summary judgment to the Fund.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.