MARK WEINBERG *v.* ARA VENDING COMPANY ET AL.
(14440)

CALLAHAN, GLASS, COVELLO, BORDEN and BERDON, Js.

Argued April 3—decision released August 4, 1992

*Richard K. Mulroney,* for the appellant (plaintiff).

*Thomas H. Cotter,* for the appellees (defendants).

GLASS, J. The sole issue in this appeal is whether, pursuant to General Statutes § 31-349 (a),[1] an award received by the plaintiff from the Veterans Administration (VA) for a service-connected injury that resulted in a 20 percent permanent partial disability of his back must be credited against the 30 percent permanent partial disability of his back found to exist after he sustained an injury in the course of his employment by the named defendant. The plaintiff, Mark Weinberg, appealed the decision of the compensation review division[2] reversing a workers' compensation commissioner's award ordering that the defendant employer, ARA Vending Company (ARA),[3] pay the plaintiff 156

[1] General Statutes (Rev. to 1987) § 31-349 (a) provides in pertinent part: "The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury, nor preclude compensation for death resulting therefrom. If an employee who has previously incurred, by accidental injury, disease or congenital causes, total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye, or who has other permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, *less any compensation benefits payable or paid with respect to the previous disability,* and necessary medical care, as elsewhere provided in this chapter, notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes." (Emphasis added.)

[2] In 1991, the compensation review division was renamed the compensation review board. Public Acts 1991, No. 91-339, §§ 18, 21–24, 32.

[3] ARA's insurer, Alexsis Risk Management, is also a defendant in this appeal.

weeks of compensation for a 30 percent permanent partial disability of his back. We reverse the decision of the review division.

The parties stipulated to the facts essential to the disposition of this appeal. On June 11, 1987, the plaintiff was employed by ARA, which had offices in Derby. Prior to the plaintiff's employment by ARA, on July 26, 1979, while he was a member of the United States Air Force, the plaintiff had fallen from a truck and injured his back. As a result of that injury, the VA awarded the plaintiff a pension based on a 20 percent disability of the lumbosacral spine. On June 11, 1987, during the course of his employment by ARA, the plaintiff suffered an injury to his back that resulted in the herniation of a disc. Both the plaintiff's physician and ARA's examining physician assigned to the plaintiff a 30 percent disability of the lumbosacral spine, which included the prior existing disability of 20 percent resulting from the service-connected injury.

The commissioner made findings in accordance with the stipulation of the parties and ordered ARA to pay 156 weeks of compensation to the plaintiff for the entire resulting 30 percent permanent partial disability of his back. Thereafter, ARA filed a motion to correct, which the commissioner denied. ARA appealed to the review division, claiming that, pursuant to § 31-349 (a), the plaintiff's VA disability award should be deducted from the workers' compensation benefits payable for his overall 30 percent disability of the back. A majority of the review division concluded that § 31-349 (a) required that the plaintiff's VA pension be set off against the workers' compensation award and, therefore, remanded the case to the commissioner.[4] The plaintiff

[4] Commissioner John Arcudi dissented from the majority decision, concluding that the term "compensation benefits" in General Statutes § 31-349 (a) refers only to the amount previously paid to a claimant for permanent partial disability under the Connecticut Workers' Compensation

appealed the decision of the review division to the Appellate Court and we transferred the appeal to ourselves pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The plaintiff claims that the review division improperly concluded that § 31-349 (a) requires that the disability pension awarded him by the VA be deducted from his recovery for permanent partial disability under the Connecticut Workers' Compensation Act (act), General Statutes § 31-275 et seq. The parties stipulated that the 30 percent disability of the plaintiff's lumbosacral spine found to exist after his work-related second injury included the prior disability of 20 percent awarded by the VA. Since there is no dispute concerning the percentage of disability attributable to the plaintiff's existing and prior disabilities, the disposition of this appeal turns on whether the review division properly construed the applicable provisions of § 31-349 (a).[5]

Act. In his dissent, Arcudi discussed at length the history and purpose of § 31-349. Arcudi also examined decisions in other jurisdictions that specifically considered whether a VA disability pension should be set off against a workers' compensation recovery for a second injury. See *Subsequent Injury Fund* v. *Slater*, 27 Md. App. 295, 340 A.2d 405 (1975); *American Building Maintenance* v. *McLees*, 296 Or. 772, 679 P.2d 1361 (1984).

[5] The plaintiff, in his brief on appeal, attempts to circumvent the parties' stipulation of facts on the basis of a VA award letter that he submitted as an exhibit at trial. The letter, dated May 28, 1981, stated that the plaintiff's "claim for disability compensation ha[d] been approved" and assigned the plaintiff a 40 percent "combined" disability rating that consisted of 20 percent for traumatic arthritis, 10 percent for loss of sense of smell, 10 percent for traumatic brain disease, and zero percent for loss of sense of taste. The plaintiff contends that this court should not automatically assign a 20 percent disability rating to his service-connected back injury because the VA award letter did not specify a disability rating for the lumbosacral spine and because, according to the letter, the plaintiff's overall VA disability rating was not determined by adding the various assigned disability percentages, but rather by using a combined rating table. In finding that the plaintiff's VA pension was based on a 20 percent disability of the lumbosacral spine, the commissioner implicitly rejected the contents of the VA award letter to the extent that they were inconsistent with the parties' stipulation. "[T]he power and duty of determining the facts

"The construction of a statute generally is a question of law for the court." *Pokorny* v. *Getta's Garage,* 219 Conn. 439, 453, 594 A.2d 446 (1991). Thus, in reviewing the decision of the review division, we must determine whether its interpretation of § 31-349 (a) is legally and logically correct. Id.

At the time relevant to this appeal, § 31-349 (a) provided in relevant part: "If an employee who has previously incurred, by accidental injury . . . permanent physical impairment, incurs a second disability by accident . . . he shall receive compensation for the entire amount of disability . . . *less any compensation benefits payable or paid with respect to the previous disability* . . . ." (Emphasis added.) The plaintiff argues that he is entitled to receive workers' compensation for his entire 30 percent disability because the term "compensation benefits," as used in § 31-349 (a), refers only to compensation under the act. ARA contends that the review division properly concluded that the plaintiff's VA disability pension constitutes "compensation" within the meaning of § 31-349 (a), to be deducted from his recovery under the act. ARA argues, moreover, that to hold it responsible for the plaintiff's entire disability would contravene the intent of § 31-349 by, in effect, allowing the plaintiff a "double recovery" for his prior disability.

"In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature."

rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Moreover, on review of the commissioner's findings, the trial court does not retry the facts nor hear evidence." (Citations omitted.) *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 117–18, 411 A.2d 924 (1979). The commissioner was entitled to adopt as a finding the stipulation of the parties and the review division majority properly confined itself to the commissioner's findings. Accordingly, we decline to consider any of the plaintiff's arguments that rely on evidence outside the scope of the stipulation.

*United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 755, 601 A.2d 1005 (1992). "[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987). We have acknowledged, however, in the context of workers' compensation legislation, that "[s]uch guidance is often of little help . . . since words seldom have precise and unvarying meanings." *Jacques* v. *H.O. Penn Machinery Co.,* 166 Conn. 352, 359 n.3, 349 A.2d 847 (1974).

When the language of a statute is unclear, we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve. *American Universal Ins. Co.* v. *DelGreco,* supra. "Because the Workers' Compensation Act is a remedial statute, this court should not impose limitations on the benefits provided for a disabled worker that the statute itself does not clearly specify." *Misenti* v. *International Silver Co.,* 215 Conn. 206, 210, 575 A.2d 690 (1990). In construing the act, moreover, this court "makes every part operative and harmonious with every other part insofar as is possible." (Internal quotation marks omitted.) *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 103–104, 491 A.2d 368 (1985), quoting *Bahre* v. *Hogbloom,* 162 Conn. 549, 554, 295 A.2d 547 (1972). Because § 31-349 (a) is part of the larger Connecticut workers' compensation scheme, the phrase "compensation benefits," as it is used in that section, must be construed with reference to the act as a whole. Accordingly, "[i]t is necessary to look beyond the express words of General Statutes § 31-349 to whatever sources might aid in its interpretation, including its legislative history, its purpose, and the construction given similar statutes in other jurisdictions." *Jacques* v. *H.O. Penn Machinery Co.,* supra, 359 n.3.

In construing "compensation benefits," as used in § 31-349 (a), to include the plaintiff's VA disability pension, the review division stated: "The words of Sec. 31-349 (a) . . . clearly grant a credit for *compensation* payable or paid in connection with a previous disability. In this case the claimant has been and continues to be paid *compensation* in the form of a VA disability benefit for the previous service-connected disability to his back. Had the legislature intended to restrict said credit only to compensation paid for a previous disability resulting from an injury accepted as or found to be compensable under the Connecticut Workers' Compensation Act, as amended, then it would or could have clearly so stated." (Emphasis in original.) Viewing § 31-349 (a) in light of its legislative history and within the context of the act as a whole, we are persuaded that the legislature did thus intend to restrict the meaning of "compensation benefits."

The word "compensation" appears at several places in § 31-349 (a) to refer to benefits payable under the act. For example, the first sentence of § 31-349 (a) provides in relevant part: "The fact that an employee has suffered previous disability . . . shall not preclude him from *compensation* for a later injury, nor preclude *compensation* for death resulting therefrom." (Emphasis added.) Section 31-349 (a) also provides that "[t]he employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards of *compensation* and all medical expenses provided by this chapter for the first one hundred four weeks of disability."[6] (Emphasis

---

[6] The word "compensation" appears in various other sections of the act to refer to benefits payable thereunder. See, e.g., General Statutes § 31-284, which provides in pertinent part that "[a]n employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure *compensation* for his employees . . . except that *compensation* shall not be paid when the personal injury has been caused

added.) As used in these provisions, it is apparent that "compensation" refers to benefits payable under the act and not to disability payments from other sources.

The review division majority concluded that the term "compensation benefits" in § 31-349 (a) included benefits other than those payable under the act on the basis that "[t]he law cannot permit [the plaintiff] to enjoy a windfall, i.e., to be paid twice for a portion of his permanent partial disability." In thus attempting to enforce what it perceived as the important public policy prohibiting double recovery; see, e.g., *Pokorny* v. *Getta's Garage,* supra; *McGowan* v. *General Dynamics Corporation/Electric Boat Division,* 15 Conn. App. 615, 546 A.2d 893 (1988), aff'd, 210 Conn. 580, 556 A.2d 587 (1989); the review division ignored the "familiar principle of statutory construction that where the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance." (Internal quotation marks omitted.) *AirKaman, Inc.* v. *Groppo,* 221 Conn. 751, 758, 607 A.2d 410 (1992), quoting *State ex rel. Hyde* v. *Dowe,* 129 Conn. 266, 271, 28 A.2d 12 (1942). Nothing in § 31-349 (a) indicates that "compensation" was intended to have two different meanings in that section. Where the legislature has used the word "compensation" throughout the act to mean workers' compensation benefits payable under the act, we conclude that it is reasonable to construe the term "compensation benefits" in § 31-349 (a) to have the same meaning.

The language in § 31-349 (a) on which the disposition of this appeal turns was added to the statute by No.

by the wilful and serious misconduct of the injured employee or by his intoxication." (Emphasis added.) See also General Statutes § 31-340, which provides in relevant part that insurance contracts between employers and insurers "shall contain an agreement by the insurer to the effect that the insurer shall be directly and primarily liable to the employee . . . to pay to him . . . the *compensation,* if any, for which the employer is liable." (Emphasis added.)

79-376 of the 1979 Public Acts. Prior to the 1979 amendment, § 31-349 (a) did not provide for a setoff against payments received as compensation for an injured employee's prior disability. The legislative history to the 1979 amendment discloses a statement by then house chairman of the joint standing committee on labor and public employees, Representative Richard J. Balducci, that supports our conclusion that "compensation benefits," as used in § 31-349, refers only to compensation under the act. In remarking on the bill on the floor of the House of Representatives, Balducci stated: "The bill also clarifies and helps to make easier for both sides problems that may come about due to a loss of a thumb or etc., it's described as one loss. Let's say if an individual loses a finger and then somewhere along the line *in the course of work is compensated* for that loss, he loses an additional three fingers, plus the thumb, he would be *compensated* for the loss of the three fingers and the thumb, not for the entire hand." (Emphasis added.) 22 H.R. Proc., Pt. 15, 1979 Sess., p. 5054. It is well established that this court may take judicial notice of statements made on the floor of the House as an indicator of legislative intent. See, e.g., *Manchester Sand & Gravel Co.* v. *South Windsor,* 203 Conn. 267, 276, 524 A.2d 621 (1987). Balducci's explanation of the bill expressly linked prior compensation to an injury sustained *in the course of work.* His statement thus bolsters our interpretation that the legislature intended to restrict the deduction in § 31-349 (a) for "compensation benefits payable or paid with respect to [a] previous disability" to payments made pursuant to the act.

Our conclusion that credit for prior compensation under § 31-349 (a) is limited to payments made under our act finds particular support in a 1991 amendment to the act. We have previously considered subsequent enactments in order to illuminate the legislature's

intent with respect to prior legislative action. See, e.g., *AirKaman, Inc.* v. *Groppo, supra,* 761. Number 91-32, § 35, of the 1991 Public Acts amended § 31-349 (a) to provide in relevant part: "If an employee having a previous disability incurs a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone, he shall receive *compensation* for . . . the entire amount of the disability . . . *less any compensation payable or paid with respect to the previous disability* . . . notwithstanding the fact that part of the disability was due to a previous disability." (Emphasis added.) The legislature's excision of the word "benefits" from § 31-349 (a) evinces an intent to give the term "compensation" a consistent meaning within that section. In fact, No. 91-32 of the 1991 Public Acts substituted "compensation" for related terms throughout the act. See, e.g., Public Acts 1991, No. 91-32, § 21 (substituted "compensation" for "benefit" and "benefits" in General Statutes § 31-306).

The 1991 amendment also added the following definition of "compensation" to General Statutes § 31-275, the definitions section of the act: "As used in this chapter and in sections 10 to 14, inclusive, of this Act, unless the context otherwise provides . . . (4) *'Compensation' means benefits or payments mandated by the provisions of this chapter,* including, but not limited to, indemnity, medical and surgical aid or hospital and nursing service required under section 12 of this Act and any type of payment for disability, whether for total or partial disability of a permanent or temporary nature, death benefit, funeral expense, dependency allowance, payments made under the provisions of section 31-284b, as amended by section 8 of this Act, 31-293a or 31-310, as amended by section 28 of this Act,

or any adjustment in benefits or payments required by this chapter." (Emphasis added.) Public Acts 1991, No. 91-32, § 1. The act as amended became effective July 1, 1991.

The legislative history of No. 91-32 of the 1991 Public Acts indicates that it was intended to be a technical amendment. In commenting on the bill on the floor of the Senate, Senator James H. Maloney, senate chairman of the joint standing committee on labor and public employees, described the bill as "the bill that makes technical recodification of the Workers' Compensation statute" and that "cleans up the statute in regard to Workers' Compensation." 34 S. Proc., Pt. 3, 1991 Sess., p. 836. Similarly, in presiding over a hearing of the joint standing committee, Maloney described the bill as "a technical revision in [e]ffect to the existing statute."[7] Conn. Joint Standing Committee Hearings, Labor and Public Employees, 1991 Sess., p. 16. He went on to state: "So we're not really dealing with changes in the substantive legislation today. If there are substantive changes that are made because of the draft, we do want to hear about that because that's not what's supposed to have occurred with this instrument." Id. Commissioner John Arcudi of the compensation review division, who participated in formulating the proposed revisions, also testified at the hearing that "the purpose of the bill [was] not to change substance, but to try to simplify language and eliminate archaic language, reduce language if possible . . . ." Id., p. 17. Finally, in commenting on the bill on the House floor, Representative Joseph A. Adamo, house chairman of the joint standing committee on labor and public employees, stated that the bill "brings into focus a

---

[7] "While we generally review a statute's legislative history based on the Senate and House debates, we may also consider discussions before a joint standing committee when discerning legislative intent." *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 760 n.16, 601 A.2d 1005 (1992).

new section of describing all the definitions that were utilized and sprinkled throughout the entire chapter." 34 H.R. Proc., Pt. 5, 1991 Sess., pp. 1959–60. When viewed together, the foregoing statements make clear that the definition of "compensation" provided in the 1991 amendment merely clarified the term as it had already been used throughout the act and did not enact any substantive change in the law.

ARA argues that to permit the plaintiff to recover the full 30 percent disability award under the act for an injury for which the VA is already partially compensating him would be to allow him a "double recovery," in contravention of established public policy. In support of this contention, ARA relies on the Appellate Court's opinion in *McGowan* v. *General Dynamics Corporation/Electric Boat Division,* supra. In *McGowan,* the plaintiffs filed for and received benefits under the federal Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq., for injuries sustained during the course of their employment with the named defendant. The plaintiffs subsequently sought benefits under the Connecticut Workers' Compensation Act for scarring resulting from the same injuries, as no such benefits were available under the LHWCA. The plaintiffs argued that their LHWCA benefits should be credited against the benefits available under the Connecticut act on a category by category basis, thus permitting them to recover for scarring. The *total* benefits that had been awarded each plaintiff under the LHWCA, however, exceeded the *total* benefits available to each of them under Connecticut law. The Appellate Court concluded that awarding the plaintiffs benefits under Connecticut's act would constitute an impermissible "double recovery."[8]

---

[8] In reaching this conclusion, the Appellate Court relied primarily on the decision of the United States Supreme Court in *Sun Ship, Inc.* v. *Pennsylvania,* 447 U.S. 715, 100 S. Ct. 2432, 65 L. Ed. 2d 458, reh. denied, 448

While it is true that, as a general principle, our Workers' Compensation Act prohibits double recovery; *Pokorny* v. *Getta's Garage,* supra, 454; we have recognized that this prohibition is not inviolate. *Enquist* v. *General Datacom,* 218 Conn. 19, 37, 587 A.2d 1029 (1991) *(Glass, J.,* dissenting). In *McGowan,* the Appellate Court construed a specific *federal* act in accordance with United States Supreme Court precedent and the language of the act itself. See footnote 8, supra. The Appellate Court also construed the exclusivity provision of our act, General Statutes § 31-284, to prohibit the plaintiffs' recovery of benefits on a category by category basis. *McGowan* v. *General Dynamics Corporation/Electric Boat Division,* supra, 621–22. The Appellate Court was not called upon in *McGowan,* however, to construe the setoff provision of § 31-349 (a) at issue in the present case.[9]

U.S. 916, 101 S. Ct. 37, 65 L. Ed. 2d 1179 (1980), which held that there is concurrent jurisdiction between state workers' compensation acts and the LHWCA for land based injuries sustained by maritime workers. In *Sun Ship, Inc.,* the court emphasized that "there is no danger of double recovery under concurrent jurisdiction since employers' awards under one compensation scheme would be credited against any recovery under the second scheme." Id., 725 n.8. The Appellate Court also concluded that the plaintiffs were not entitled to recover under Connecticut's act on the basis of a 1984 amendment to the LHWCA that specifically provided: "Notwithstanding any other provisions of law, any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this act pursuant to *any other workers' compensation law* . . . shall be credited against any liability imposed by this act." (Emphasis added.) 33 U.S.C. § 903 (e).

[9] In *Todd Shipyards Corporation* v. *Director, Office of Workers' Compensation Programs, United States Department of Labor,* 848 F.2d 125 (9th Cir. 1988), the United States Court of Appeals for the Ninth Circuit considered whether the LHWCA permits an employer to deduct from an injured employee's scheduled disability percentage the percentage of disability resulting from a previous injury for which the employee receives VA benefits. The LHWCA, as amended in 1984, specifically provides for the setoff of any amounts paid to an employee "pursuant to any other workers' compensation law" for the same injury, disability or death for which LHWCA benefits are claimed. See footnote 7, supra. The Court of Appeals concluded that VA disability benefits are not included in the term "any other work-

The legislature has expressly restricted the term "compensation" to mean benefits payable under the act, unless the context provides otherwise. Public Acts 1991, No. 91-32, § 1. The context of § 31-349 (a) does not reveal a legislative intent to give "compensation" a meaning other than that expressly provided by the definition in the 1991 amendment. Where the legislature has specifically defined an operative term used within a statute, we are bound to accept that definition; *Plasticrete Block & Supply Corporation* v. *Commissioner of Revenue Services*, 216 Conn. 17, 27, 579 A.2d 20 (1990); unless to do so would create an irrational result that could not have been intended by the legislature. See, e.g., *Vernon Village, Inc.* v. *Carothers*, 217 Conn. 130, 139–40, 585 A.2d 76 (1991).

In *Levanti* v. *Dow Chemical Co.*, 218 Conn. 9, 587 A.2d 1023 (1991), this court construed § 31-349 to permit recovery for a prior *noncompensable* injury that is followed by and combines with a subsequent compensable injury. In rejecting the defendant employer's claim that thus applying § 31-349 would lead to irrational results by imposing liability on employers for disabilities which are not wholly attributable to their employment, we stated: "Section 31-349 does not create liability. To the contrary, it is an apportionment statute that limits the liability of employers previously imposed." Id., 17. We concluded that the application of the statute promoted rational results since § 31-349 would have served to limit the defendant's liability to 104 weeks if the plaintiff's resultant disability had warranted an award in excess of that amount. Id., 18.

ers' compensation law," and, thus, cannot be credited against LHWCA recovery. In reaching this conclusion, the court noted that "the purpose of the Veterans' Act is to prevent veterans from being disadvantaged by their military service, and that the Act is to be liberally construed to their benefit"; id., 128; and pointed to certain provisions of the VA statutes and regulations as indicative of "a congressional intent to treat disabled veterans differently from individuals injured in an occupation covered under a traditional workers' compensation law." Id., 129.

In the present case, our conclusion that the plaintiff may recover benefits for his prior disability both under the act and from the VA results from adherence to the statutory definition of "compensation" in the act as amended. We are persuaded that this conclusion is not so irrational that it could not have been intended by the legislature; see *Enquist* v. *General Datacom,* supra; rather, we conclude that the legislature rationally could have intended to prohibit double recovery under § 31-349 (a) only to the extent that an employee may not recover twice for the same injury under the Connecticut Workers' Compensation Act.[10]

The decision of the compensation review division is reversed and the case is remanded to the compensation review division with direction to deny the defendants' appeal.

---

[10] We note that the Supreme Court of Oregon reached a similar conclusion in *American Building Maintenance* v. *McLees,* 296 Or. 772, 679 P.2d 1361 (1984). The question presented in *McLees* was virtually identical to the issue in the present case: whether Oregon's workers' compensation law required consideration of a previous VA disability award when determining the amount of a subsequent Oregon workers' compensation award for injury to the same part of the body. Oregon's statute provided in pertinent part: "Should a further accident occur to a worker who is receiving *compensation* for a temporary disability, or who has been paid or awarded *compensation* for a permanent disability, his award of *compensation* for such further accident shall be made with regard to the combined effect of his injuries and his past receipt of money for such disabilities." (Emphasis added.) Or. Rev. Stat. § 656.222. In addition, the statute specifically provided: " 'Compensation' includes all benefits, including medical services, provided for a compensable injury to a subject worker or the worker's beneficiaries by a direct responsibility employer or the State Accident Insurance Fund Corporation pursuant to this chapter." Or. Rev. Stat. § 656.005 (9). In concluding that the statute required a credit only for previous compensation paid a worker under Oregon's workers' compensation system, the court stated: "The word ['compensation'] standing alone does not convey a meaning that would be unquestioned in all circumstances. As used in [the workers' compensation statute], 'compensation' is a term of art, a word with a meaning peculiar to the workers' compensation laws." Id., 777.

In this opinion CALLAHAN and BORDEN, Js., concurred.

COVELLO, J., with whom BERDON, J., joins, dissenting. I do not agree that the term "compensation benefits" is limited to benefits payable under the act and, therefore, respectfully dissent. I would affirm the compensation review division's determination that the term "compensation benefits" in General Statutes 31-349 (a)[1] means any compensation from any source, including Veterans Administration benefits. Any other result distorts the plain language of the statute and contravenes our longstanding public policy against "two independent compensations for the [same] injury [i.e., double dipping]." *Enquist* v. *General Datacom,* 218 Conn. 19, 26, 587 A.2d 1029 (1991), quoting *Uva* v. *Alonzy,* 116 Conn. 91, 98, 163 A. 612 (1933).

Although the majority meticulously examines the legislative history of § 31-349 (a), where, as here, the statutory language is clear and unambiguous, there is no need for statutory construction or a review of the legislative history; "it is assumed that the words themselves express the intent of the legislature." *Federal Aviation Administration* v. *Administrator,* 196 Conn. 546, 550, 494 A.2d 564 (1985), citing *State* v. *Smith,* 194 Conn. 213, 222, 479 A.2d 814 (1984). "If there is no ambiguity in the language of the statute, it does not become ambiguous merely because the parties contend for different meanings." *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 571, 440 A.2d 767 (1981).

The express language of § 31-349 (a) grants a credit for "*any* compensation" payable or paid in connection with a previous disability. (Emphasis added.) There is no language in the statute that restricts the phrase "any compensation" to mean only compensation bene-

---

[1] See footnote 1 of the majority opinion.

fits payable under the Connecticut Workers' Compensation Act. Had the legislature intended to restrict the compensation credit to compensation paid for a previous disability resulting from an injury accepted or found to be compensable under the Connecticut Workers' Compensation Act, then it could have expressly stated that to be the case.

Further, although the majority claims that the definition of "compensation" added to the act by the 1991 technical amendments support their contention, the majority fails to consider the definition as a whole. Public Acts 1991, No. 91-32. The new definition provides that "[a]s used in this chapter and in sections 10 to 14, inclusive, of this Act, *unless the context otherwise provides* . . . (4) 'Compensation' means benefits or payments mandated by the provisions of this chapter . . . ." (Emphasis added.) By adding the phrase "unless the context otherwise provides," the legislature recognized that in some cases the circumstances under which the statute is being applied control the meaning of the term "compensation."

Section 31-349 permits full compensation for the totality of all the disability that exists but only after other compensation for earlier disabilities has been deducted. Such a system prevents double dipping, a policy to which we have long subscribed in our analysis of the Workers' Compensation Act. *Gurliacci* v. *Mayer,* 218 Conn. 531, 570, 590 A.2d 914 (1991); *Uva* v. *Alonzy,* supra; *Olmstead* v. *Lamphier,* 93 Conn. 20, 104 A. 488 (1918).

Under the majority's construction of the statute, the plaintiff will receive double compensation for a portion of his disability. The plaintiff currently receives compensation from the Veterans Administration (VA) based upon a 20 percent disability. After the second injury, the plaintiff was assigned a total disability of 30 per-

cent, which includes the previous 20 percent disability awarded by the VA. In order to make the plaintiff whole and to avoid double dipping, ARA should only have to compensate the plaintiff for the 10 percent disability ascribable to the second injury. This, when added to the VA benefits, fully compensates the plaintiff for his 30 percent disability. Under the majority's rationale, the plaintiff will receive compensation for the same 20 percent disability from both the VA and ARA in addition to compensation for the 10 percent disability from the second injury. As a result, the plaintiff will receive 50 percent disability benefits for what is in actuality a 30 percent disability. I submit that such a construction is unwarranted and the VA benefits should be credited against the plaintiff's total compensation.

The majority's construction of § 31-349 (a) discourages employers from hiring handicapped employees. One of the purposes in enacting second injury fund legislation like § 31-349 (a)[2] was to prevent discrimination against handicapped workers. *Jacques* v. *H.O. Penn Machinery Co.,* 166 Conn. 352, 355, 349 A.2d 847 (1974). By making the employer liable for the total percentage of disability, employers will be reluctant to hire workers with a previous disability, when the prior injury is compensated by sources other than workers' compensation.

Further, the majority's construction serves to increase the cost of workers' compensation in Connecticut, a result the state can ill afford. Under General Statutes § 31-354 an employer must contribute to the second injury liability fund "a sum not to exceed five per cent of the total amount of money expended by such

---

[2] Under General Statutes § 31-349 the employer is required to pay all awards of compensation for the first 104 weeks of the disability. After the employer has completed the payments for the 104 weeks, the compensation claim may be transferred to the Second Injury Fund, which thereafter becomes responsible for further compensation benefits.

employer . . . in payment of his liability under this chapter for the preceding calendar year." Thus, the more money spent by an employer in workers' compensation benefits, the more money the employer must contribute to the Second Injury Fund. Whether the employer assumes the total responsibility here or transfers the matter to the Second Injury Fund after 104 weeks, the eventual result will be increased costs to those funding these disability benefits.