[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION IN LIMINE
This motion calls upon the court to construe Connecticut General Statutes 14-227a(1) and in particular the meaning of the phrase "at the hospital." It is undisputed for purposes of this Motion that a blood sample which was eventually tested for alcohol content, the results of which testing are sought CT Page 9275-LL to be introduced by the state, was drawn by an Emergency Technician-II (E.M.T.-II) at the scene of the motor vehicle accident which led to the charges against the defendant. It was not drawn within the physical confines of the hospital building.
The state introduced testimony from the E.M.T.-II in question, Charles Jaskiewicz, and from Dr. Howard Engelke, who was Chief of Emergency Medicine at Lawrence Memorial Hospital at the time of the alleged incident. Both testified to the effect that they view the "hospital" as more than bricks and mortar, more than just a physical structure, and rather as a living institution whose tentacles, so to speak, extend beyond the confines of the hospital building and to the "physician extenders" . . . those paramedics and emergency medical technicians who work with patients for the hospital and under its supervision at accident sites and en route to the hospital building.
The State also introduced into evidence an E.M.T. manual, state regulations concerning emergency medical services and CT Page 9275-MM hospital protocols concerning such services.
The defendant claims that the critical language of the statute, "at the hospital" is clear and unambiguous on its face, and that the court must, therefore, give that wording its plain and commonly understood definition. There is no need to look behind the statute to its legislative history, claims the defense, in order to construe its meaning.
"The primary rule of statutory construction is that `[i]f the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature; Houston v. Warden, 169 Conn. 247, 251,363 A.2d 121 (1975); Hurlbut v. Lemelin, 155 Conn. 68, 73, 230 A.2d 36
(1967); and thus there is no need to construe the statute. Bell v. Planning and Zoning Commission, 173 Conn. 223, 226,377 A.2d 299 (1977); Houston v. Warden, supra 251; Hartford Hospital v. Hartford, 160 Conn. 370, 375-76, 279 A.2d 561
(1971).'" State v. Smith, 194 Conn. 213, 221 (1988), quoting Anderson v. Ludgin, 175 Conn. 545, 552, 400 A.2d 712 (1978).
"The words of [a] statute `are to be given their commonly CT Page 9275-NN approved meaning, unless a contrary intent is clearly expressed.' Holmquist v. Manson, 168 Conn. 389, 393,362 A.2d 971 (1975); State v. Antrum, 185 Conn. 118, 122, 440 A.2d 839
(1981); General Statutes 1.1." State v. Kish, 186 Conn. 757,764, 443 A.2d 1274 (1982).
On its face, this is an appealing argument. Although the title of the statute refers to "hospital blood samples," the body of the subsection refers explicitly to the admissibility of samples drawn "at the hospital." The statute does not use such wording as "by the hospital," "under the supervision or direction of the hospital," "in accordance with hospital approved procedures" or like language. Indeed, if that portion of the statute were viewed in isolation, the defense might well prevail with regard to its suggested approach to statutory construction, and it might well also prevail on its motion.
A "hospital", however, is by definition an "establishment for the lodging, care and treatment of persons suffering from disease or other abnormal physical or mental conditions . . ." CT Page 9275-OO Connecticut General Statutes Sec. 19a-490(b). The legislature's choice of the word "establishment" rather than "building" suggests at least the possibility that it may have had in mind a broader conception than that suggested by the defendant. Webster's Ninth New Collegiate Dictionary defines "establishment" as, inter alia, "a public or private institution", and, despite the claim made in the defendant's Memorandum of raw the definition of "institution" is not limited to the physical plant of such an institution.
Moreover, another portion of C.G.S. Sec. 14-227a(1) renders the disputed language distinctly ambiguous. In particular, among the criteria for admission of a hospital blood sample is the requirement that it be taken by only certain enumerated classes of individuals. Among chose classes is "emergency medical technician-II". A review of the regulations surrounding emergency medical technicians informs us that "emergency medical services" by definition, involves services that are performed "away from the hospital". (emphasis added) Regulation 19a-179-1(g). By including within the ranks of such authorized persons a class of CT Page 9275-PP individuals who, by definition, only perform their services outside the physical confines of a hospital, the legislature has rendered ambiguous the "an the hospital" language referred to above. The presence of such an ambiguity puts into play additional principles of statutory construction and permits and even mandates reference to the legislative history, where available.
It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. Caltabiano v. Planning Zoning Commission, 211 Conn. 662, 666,560 A.2d 975 (1989). Vaillancourt v. New Britain Machine/Litton,224 Conn. 382 (1993).
"`In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature.' United Illuminating Co. v. Groppo, 220 Conn. 749, 755,601 A.2d 1005 (1992). `[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the CT Page 9275-QQ legislature's intent.' American Universal Ins. Co. v. DelGreco, 205 Conn. 178, 193, 530 A.2d 171 (1987).
"When the language of a statute is unclear, we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve." Weinberg v. Vending Co., 223 Conn. 336, 340-41, 612 A.2d 1203 (1992). Mingachos v. CBS, Inc., 196 Conn. 91, 104, 491 A.2d 368
(1985).
"In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result." Sanzone v. Board of Police Commissioners, 219 Conn. 179,187, 592 A.2d 912 (1991). In considering the intended operation of a statute courts must also assume that the legislature, in enacting the statute, had in mind other relevant legislation then in existence. Danbury Rubber Company v. Local 402, 145 Conn. 53, 138 A.2d 783 (1958). It seems reasonable to presume as well that the legislature was aware of the relevant state agency regulations. CT Page 9275-RR
It is clear from the legislative history, summarized in the State's Memorandum of Law, as well as the entire body of legislation concerning operation of motor vehicles while under the influence of alcohol and/or drugs, that the legislature sought to ensure the admissibility into evidence of reliable scientific evidence of blood alcohol content. It recognized the injustice worked upon the people of the State of Connecticut when a motorist, alleged to have been under the influence, was injured as a result of an accident and was, therefore, incapable of consenting to or submitting to standard police-administered testing mechanisms. It sought to substitute for such testing by providing for the admissibility of tests of such an individual's blood taken in the ordinary course of a hospital's business for purposes of diagnosis and treatment, reasoning that, given the purposes for such testing, the results would be at least as reliable as those from tests administered by police personnel.
Since the legislature is presumed to be aware of the entire body of law in existence of the time of a legislative CT Page 9275-SS enactment, it is presumed to have been aware of the fact that, by providing for the admissibility of a test of blood drawn by an Emergency Medical Technician-II, it was sanctioning the admissibility of not only the results of tests of blood drawn within the physical confines of a hospital building, but also the results of tests of blood drawn at the more modern conception of the hospital as living institution that was described by Dr. Engelke. Because to construe the statute as requested by the defendant would render the inclusion of the provision regarding emergency medical technicians meaningless, whereas construing it in accordance with the interpretation urged upon the court by the State would be consistent with the legislative purpose and give to the disputed phraseology a meaning altogether consistent with current conceptions of the modern hospital, the State must prevail in its interpretation.
The defendant also seeks suppression of the test results based on alleged non-compliance with Regulation 14-227a(8)d, which appears to require a second test as a prerequisite to admissibility. The defense claims that this regulation is made applicable to the test performed in this case by CT Page 9275-TT Regulation Sec. 14-227a-2, which applies Sec. 14-227a(8)d, among others, to "chemical or instrumental analyses of blood, breath and urine for alcohol when the results thereof may be offered as evidence in a court of law with respect to persons alleged or suspected to have been under the influence of intoxicating liquor when operating a motor vehicle" (emphasis added). The same section of the Regulations, however, exempts analyses "used exclusively for other purposes."
The defendant claims that because the result of a hospital blood test "may be offered as evidence in a court of law", pursuant to Connecticut General Statutes Sec. 14-227a(1) it is subject to the requirements of Regulation 14-227a-8.
In this situation, it is the use of the word "may" which is ambiguous, requiring an analysis of the relevant legislation and regulations taken together as a whole. That word is susceptible of many definitions, and the defense urges upon the court the claim that as long as it is possible to use the results of a hospital blood test as evidence, which it is under Sec. 14-227a(1), the regulation applies. If this CT Page 9275-UU contention is correct, however, why do the Regulations bother to include the exemption for tests "used exclusively for other purposes"? There would be no need to exempt tests that are exclusively used for other purposes if there was no possibility of their being offered as evidence in a case such as this. Thus, the defendant's interpretation requires us to believe that the Regulations are intentionally redundant. The more reasonable interpretation of the word "may" in this context is that it refers to those tests performed under police direction where the results "may", if a case goes to trial, be offered pursuant to Sec. 14-227a(d). The phrase "used exclusively for other purposes" can only mean that the entity performing the test uses the results thereof exclusively for other purposes, in this case, diagnosis and treatment. Thus, police administered or directed blood, breath or urine tests for alcohol, the purpose of which is to produce an analysis which may be used as the predicate for an arrest or as evidence at a trial, is covered by the Regulations. A hospital test, performed exclusively for medical purposes relating to diagnosis and treatment, is not CT Page 9275-VV subject to the same Regulations, despite the fact that a procedural mechanism exists to sieze [seize] the results of such a test pursuant to a search warrant and to offer it into evidence if it meets the statutory criteria. The exemption from the Regulations of tests whose results are sought to be introduced pursuant to Sec. 14-227a(1) is logical in light of the specific criteria to assure reliability (which do not include a second test) contained within that statutory subsection, as well as the implicit recognititon [recognition] that it would bed [be] improper to impose upon a hospital the requirement of double testing, when, given the extensive body of regulations concerning hospitals already in existence, there are other methods for ensuring the reliability of blood tests performed in hospitals.
Therefore, the motion in Limine is denied.
Jonathan E. Silbert, Judge
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]
CT Page 9275-EEE